ABBOTT V. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, *Appellant*.

| 83b | 271 |
| 48a | 401 |

| 83b | 271 |
| 58a | 177 |

| 83b | 271 |
| 69a | 440 |

| 83b | 271 |
| 140 | 485 |

| 83b | 271 |
| 151 | 498 |

| 83b | 271 |
| 82a | 101 |

1. **Running Streams:** INTERFERENCE WITH. Unless authorized by lawful authority no one can interfere to any material extent with the waters of a running stream.

2. ——: BRIDGE: NEGLIGENCE. Where, however, there is lawful authority for the construction of a bridge or other structure over such stream, the person building it is liable, only in case of negligence or unskilfulness in the manner of doing the work, to one suffering injury from its interference with the running water.

3. ——: ——: ——. Where such bridge or structure is erected without lawful authority there may be a recovery without proof of negligence.

4. **Instructions:** NEGLIGENCE. In an action for injury to a land owner from overflow of water from a stream caused by the negligent construction of a bridge, the instructions should confine the jury to the specific facts of negligence charged in the petition.

5. **Surface Water:** RAILROAD: ROAD-BED. A railroad, in the absence of negligence or unskilfulness in the construction of its road-bed, will not be liable to a land owner for injury from the overflow of surface water occasioned by the obstruction of the road-bed.

6. **The rule of the** common law as to the flow of surface water affirmed and that of the civil law denied.

*Appeal from Platte Circuit Court.*—HON. GEORGE W. DUNN, Judge.

REVERSED.

*Stringfellow, Strong & Mosman* for appellant.

(1) The first instruction given for the plaintiff was wrong in that it did not confine the jury in its finding to the facts alleged in the petition to constitute unskilfulness in the construction of the bridge. *Price v. R. R.,* 72 Mo. 416; *Waldhier v. R. R.,* 71 Mo. 514; *Edens v. R. R.,* 72 Mo. 212. (2) The second instruction given for plaintiff was erroneous. He was permitted by it to recover whether defendant was in fault or not. All that the jury was to find was whether defendant failed to provide water-ways, and that owing to such failure water flowing out of the creek was dammed and forced to run three miles north alongside of the track and then over the top of it on to plaintiff's lands. (3) The general propositions of law announced in the second, third and

sixth instructions given for plaintiff, and the four given by the court of its own motion were not the law ; are erroneous in that they announce the rule of the civil law and not that of the common law as to the flow of surface water.    The common law in its full extent on this subject is in force in this  state and this has been so held by decisions of this court for a long series of years.  *Jones v. Hannovan*, 55 Mo. 466 ; *Hosher v. R. R.*, 60 Mo. 329 ; *McCormick v. R. R.*, 57 Mo. 433 ; *Munkers v. R. R.*, 60 Mo. 334, and was never questioned until the case of *Shane v. R. R.*, 71 Mo. 237.    (4) The defendant did not owe it as a duty to plaintiff to construct culverts or waterways through its road-bed. *Sweet v. Cutts*, 50 N. H. 436 ; *Barkley v. Wilcox*, 86 N. Y. 140 ; *R. R. v. Hammer*, 22 Kas. 763 ; *Gibbs v. Williams*, 25 Kas. 214; *Cairo v. Stevens*, 73 Ind. 278 ; *Taylor v. Fickas*, 64 Ind. 167 ; *Lynch v. Mayor*, 76 N. Y. —— ; *Morrison v. R. R.*, 67 Me. 353 ; *Gannon v. Hargardon*, 10 Allen 109 ; *Parks v. Newberryport*, 10 Gray 28 ; *Rawston v. Taylor*, 11 Excheq. 369.    "There is a manifest distinction between casting water upon another's land" (as in the *McCormick case*, 57 Mo. 433), "and preventing the flow of surface water upon your own" (*Barkley v. Wilcox*, 86 N. Y. 140) ; between building a levee, or digging a drain to carry off the surface water or prevent it from coming on your land, and erecting the walls of a house, or the grade of a railroad embankment which happens incidentally to act as a levee, and actually does obstruct surface water.    Note by Redf'd to *Sweet v. Cutts*, 20 Am. L. Reg.

*Doniphan & Reed* and *Jas. W. Coburn* for respondent.

(1)  There are no questions as to the admission of evidence, but that the evidence did not authorize the verdict.    We understand that where a jury has passed upon the evidence and there is any evidence to sustain

the verdict, the court will not interfere with it. *Moore v. Mo. P. R. R.*, 73 Mo. 438; *State v. Musick*, 71 Mo. 401; *State v. Warner*, 74 Mo. 83; *Hamilton v. Beery*, 74 Mo. 176; *State v. Baber*, 74 Mo. 292; *Cartwright v. Culver*, 74 Mo. 179. (2) The evidence is clear that prior to building the railroad, the water flowed west and did not discommode the plaintiff. Abbott met a heavy current flowing along the east side of the track, going north to his land, at the time of this storm. *McCormick v. K. C., St. J. & C. B. R. R.*, 70 Mo. 360. This *McCormick case* should be conclusive of the one at bar. The water was prevented by the embankment of the road-bed on Bland farm flowing west as before the road was built, and the defendant failed to provide water-ways for the water the embankment collected. (3) This is not a case where the judgment must be upon a specific count, or for separate and specific injuries. *Brinkman v. Hunter*, 73 Mo. 178. (4) The instructions asked by the appellee are nearly *verbatim* the law as laid down by this court in other cases. The questions were of fact and were submitted to the jury in the instructions. *Bell v. Hannibal & St. Joe R. R.*, 72 Mo. 50; *Rose v. City of St. Charles*, 49 Mo. 509; *Shane v. K. C., St. Joe & C. B. R. R.*, 71 Mo. 237; *Munkers v. K. C., St. J. & C. B. R. R.*, 72 Mo. 514. Those asked by the appellant were upon the theory that there could be no recovery on the second count, and were properly refused. (5) The court then gave, on its own motion, instructions 1, 2, 3 and 4 on page 44 of record, which are as favorable to appellant as they could possibly be upon the law and evidence of the case.

RAY, J.—This action was begun in the circuit court of Platte county, Missouri, by the plaintiff to recover for loss of crops and injury to his lands, situated in the northwest quarter, the southwest quarter and the southeast quarter of section 29, township 54, range 36, in Platte county, Missouri. Said lands and crops were injured and damaged in April, 1876, by overflow, which is charged

to have been occasioned by defendant's negligence. The petition is set out in two counts. The first count charges the defendant with negligence and unskilfulness in the construction of a pile bridge over a stream called Bear creek in the year 1872. Said bridge is in the line of defendant's railroad at a point where it passes through the southeast quarter of section 3, township 53, range 36. The defendant's negligence, as charged in the first count, was that the bridge was built too low, and that the piling driven in the channel of the stream were so near together as to dam up the proper water-way, obstruct the channel and cause wood, logs and drift to accumulate on the upper or eastern side of said bridge; and that the flow of water was thereby obstructed, and said stream caused to overflow its western bank at or near the lands of certain parties named Stultz and Bland, and to pass over their lands to the lands of plaintiff, and to deposit thereon driftwood and sand, and to destroy his wheat and corn crops and grass to his damage in the sum of $500.

The second count in the petition charges that defendant's railroad is constructed through sections 29 and 33, in township 54 and range 36, and section 3, township 53, range 36, in Platte county, and that in the year 1876 the defendant negligently permitted the road-bed and track built along and through said lands to become out of repair, and had so negligently constructed the same that there was not sufficient water-way for the water which fell and ran down from higher ground toward the railway, and such as might and did escape from Bear creek, by reason of its overflow, to pass over or under the railroad; but that, by reason of this unskilful and negligent construction of the road-bed, the water, which would naturally have thus passed under the railroad, and thence to points south of defendant's line, was forced from section 3 northwise and up the river to sections 33 and 29 and flooded the plaintiff's land, cutting and guttering it, and washed away 30 acres of wheat, worth $400; 12 acres of

corn, worth $120; all to the plaintiff's damage in the sum of $600.

The answer of the defendant was a general denial of the allegations of the petition contained in either count thereof. The trial was had before a jury and a general verdict was returned in plaintiff's favor, assessing the damages at $300. After unsuccessful motions for a new trial and in arrest, judgment was entered thereon for the plaintiff, and the defendant appealed therefrom to this court.

It will be seen from the petition, whose two counts are set out in substance above, that the first seeks to recover for the alleged negligence of defendant in building its bridge over said stream called Bear creek, and for a negligent interference with the flow of its waters, while in the second count a recovery is sought for the negligence of the defendant in failing to provide water-ways sufficient to accomodate and carry off the surface waters falling on the surrounding and adjacent country, and such as may have escaped the banks of said creek by reason of its overflow, and thence spread out over the adjoining country. With regard to these different classes of waters we think different rights exist, and different rules of law are to be applied. Unless authorized by appropriate and constitutional statutory enactment, no one can, in any material manner or extent, interfere with the waters of a running stream. Such an interference with a stream is *per se* a nuisance, for it is a maxim of the law in regard to such streams, that the water runs, and ought to run, as it has been accustomed to run. Where there is lawful authority for the construction of bridges, or other structures over or upon such streams, the party building the same is liable for any negligence in the mode or method of doing the work.

The cause of action alleged in the first count of the petition is not for the construction of said bridge over Bear creek, without authority of law. In such case the mere interference to a material extent with a running stream is actionable by one suffering damage thereby, without

proof of negligence. Bear creek, it seems, is a local stream of some 7 or 8 miles in length, and, rising in the bluffs, flows out into the bottoms, and approaches the railroad from a northeast direction. Section 765, Revised Statutes, authorizes railroad companies to construct their road across, along or upon any stream or watercourse * * * which the route of its road shall intersect or touch, but provides that the company shall restore the stream or watercourse to its former state, or to such state as not unnecessarily to impair its usefulness. As railroads are then authorized by law to bridge streams of the character of Bear creek, we must, in the absence of averment in the petition to the effect that said bridge was constructed unlawfully, assume that the defendant had the legislative sanction to construct over or upon it a proper bridge of suitable material, height, width and dimensions. In such a case its liability is not an absolute or unconditional one, but, if in the construction of such a bridge over such streams damage is unavoidably done, or merely results incidentally from such proper construction thereof, such damage is, we think, *damnum absque injuria.* The cause of action, however, as distinctly set out in the first count, is for a misfeasance, or the construction of said bridge in a negligent and unskilful manner, and the negligence complained of consists in the two specified particulars, to-wit: In building the bridge too low, and in placing the piling so near together as to obstruct the channel and dam up the waters of the creek. The assignment of these two grounds of negligence constitutes the sole cause of action contained or set forth in said first count, and, under a number of decisions of this court, no other inquiry could properly be authorized, or permitted, or submitted to the jury for their determination. The instructions, however, given in the case at the instance of the plaintiff and by the court of its own motion, do not, we think, thus limit and confine the inquiry as to the alleged negligence or unskilfulness of defendant in the construction of said bridge.

The first instruction given by the court at the request of plaintiff is as follows: "That if they believe, from the testimony, that by reason of the negligence, carelessness or improper construction of the railroad bridge over Bear creek, in section 3, township 53, range 36, the water was forced out of the bed of the stream and caused to flow over and upon the lands of plaintiff, then he is entitled to recover in this action the damages he has sustained to his crops and lands by reason thereof."

By this instruction it appears that the jury are told that if they believe from the testimony the waters were forced out of the bed of the stream and caused to flow over the plaintiff's lands by the "negligence, carelessness or improper construction of the railroad bridge" in any particular, whether in those specially averred or otherwise, the plaintiff was entitled to recover the damages thereby sustained. Under the former decisions of this court, as we have intimated, this was not a submission of the issue made by the pleading, but was an enlargement thereof and was therefore erroneous. *Price v. R. R.*, 72 Mo. 416; *Waldhier v. R. R.*, 71 Mo. 514; *Edens v. R. R.*, 72 Mo. 212; *Bank v. Murdock*, 62 Mo. 70; *Zimmerman v. R. R.*, 71 Mo. 491.

The ninth instruction given by the court at the instance of plaintiff is as follows: "That although the jury may believe that the water escaped from the bed of Bear creek, from points other than the bridge, yet if they believe that the land of the plaintiff was overflowed, by reason of the amount of water, which was forced out of the creek bed by the obstructions of the bridge, uniting with other, and by the increase of the whole volume of water causing such overflow, then the plaintiff is entitled to recover."

This instruction is still more erroneous, we think, because it does not require a consideration and finding as to defendant's negligence, which is the ground of its liability in this case, in any particular whatever, but makes the defendant liable and authorizes the plaintiff to

recover if the jury believe that the plaintiff's land was overflowed by reason of the amount of water which was forced out of the creek bed by the obstructions of the bridge, uniting with other waters of the creek that had escaped from its bed at other points than the bridge. The gravamen of the complaint, as we have said is negligence, which is altogether ignored by this instruction and the liability based on the mere fact that the waters escaped from the creek at the bridge, thereby increasing the whole volume of water causing such overflow. It is to be observed that this instruction assumes the existence of obstructions at the bridge, while there was a conflict of evidence on that point, which should have been found by the jury and not assumed by the court, as we think it is in the instruction. The jury were not required in the instructions to determine the issue made by the first count, whether or not the bridge was built too low, and whether or not the piling was driven so close together as to obstruct the channel and dam up the water—and with the exception of the first instruction given at plaintiff's request which authorized an inquiry generally as to defendant's negligence, carelessness or improper construction of the bridge as we have seen, no question as to the construction of the bridge, whether careful or negligent, whether skilful or unskilful, was submitted to the jury. The bridge in question over Bear creek was a timber bridge, 90 feet in length, two piles in the creek and two on each side near the shore and the stringers of said bridge were some 12 or 14 feet above the bed of the stream. There was no evidence offered to show that in the prudent construction of railroad bridges over streams of like size and capacity similarly situated with reference to the drainage of the adjacent country in ordinary seasons and subject to like sudden floods in times of heavy rains and such as are likely to occur in that locality, it was customary to build bridges of a different pattern or character or to provide them with different or more water-ways. The evidence shows, it is true,

that sometime after the floods, in 1876, the defendant put in a bridge of different pattern across Bear creek. It was in evidence that the centre bents of the old bridge had been scoured out by the action of the water and the new bridge of the same height but in form. what is called "a truss" had been substituted. As common carriers of persons and property over its railroad it was the defendant's duty to make and adopt for their safety any change which experience of floods in that locality or the science of bridge building would suggest as best for that purpose.

But we scarcely need prosecute this branch of the case any further; it only remains, therefore, to notice the second count, and consider the rights and duties of the defendant in the construction of its road-bed and track along and through the bottom lands described in the petition with reference to the safety of the road-bed and track, the security of the travelling public, and the injury resulting to the neighboring land proprietors from the unavoidable obstruction and deflection of the flow of surface water, incident to a careful and skilful construction of the same. We assume that the waters in question, overflowing as they did the banks of the creek, in consequence of the insufficiency of the natural channel of the same to hold and carry off, through the bottom, are "surface waters" within the meaning of that term, as used and defined in the books and authorities on that subject. *McCormick v. K. C., St. Joe & C. B. R. R. Co.* 57 Mo. 438. We assume further that the defendant was authorized by its charter, the statutes of the state, and proceedings thereunder, to construct its road-bed and track through the bottom lands in question. Indeed, this is conceded by the petition itself; and we further assume that in doing so, it was bound to exercise reasonable care and skill, with reference to the safety and security of its road-bed and track, and to the travelling public; and at the same time we also assume that it was equally bound to see that no unnecessary injury was done

to adjoining proprietors, by the obstruction and deflection of surface water incident to such careful and skilful construction of the same. This duty rests with equal force upon the defendant in both respects, and whether there has been a failure to discharge that duty in a given case, in any material particular, either by failure to provide sufficient water-ways when necessary and proper, or by failure to exercise reasonable care and skill in any other particular, is a question of fact to be determined by the jury under proper instruction from the court, with reference to the particular facts in each case. In these assumptions, we think we are fully authorized and justified by all the earlier and later, as well as the best considered adjudications of this court. These positions are, we think, equally well fortified by the standard common law text writers on this subject.

It may be well to premise, as we have seen, that the authority of defendant to construct the road-bed and track is not controverted in this case. It may be well, also, to examine, somewhat, the facts of the case, as shown by the evidence, in reference to the nature and surface of the ground, or bottom, through which this part of defendant's road is built, the capacity or want of capacity of the natural channel of Bear creek to hold and carry off through the bottom the superabundant waters flowing into the same from the neighboring hills, in which the creek takes its rise, in times of violent rain-storms such as caused the overflow in question; the character and nature of the surface of the ground in the bottom adjacent and near the point at which the over-flow in question occurred, and, also, how the waters, thus overflowing the banks of the creek, were accustomed to spread out everywhere and flow in all directions over the bottom lands through which the road was constructed, without channels, sloughs or swales to collect and carry them off in anything like well-defined banks, or borders. As we have seen, the defendant's road at this point is built through the nearly level bottom land

of the Missouri river, on a grade nearly even with the general surface of the ground, not far from and parallel to the range of bluffs, to the northeast. Bear creek, as we have seen, takes its rise some seven or eight miles in a broken hilly country to the northeast, and by its rapid current in times of violent storms, precipitates an immense volume of water into its channel which, after it leaves the bluffs, is and always has been wholly insufficient to hold and carry off through the bottom along and through which the road-bed and track in question are built. In consequence of the inadequacy in the channel of the creek the waters, thus overflowing its banks, are accustomed and always have been, to spread out in all directions and flow over the bottom along and through which defendant's road is situated. That we are fully justified in making the assumptions above stated it is only necessary to refer briefly to the earlier and later adjudications of this court, and the acknowledged text writers on the subject.

In the case of *McCormick v. K. C., St. J. & C. B. R. R. Co.*, 57 Mo. 433 and 437, this court uses this language: "There is no doubt but that the authorities of towns and cities, whose duty it is to keep the streets and public ways in good repair for the use of the public, may repair the same in a reasonable manner, without incurring any liability to adjoining proprietors, even though said improvements may cause a change in the natural flow of surface water to their injury. * * * The general rule, however, is that either municipal corporations or private persons may so occupy and improve their land, and use it for such purposes as they may see fit, either by grading or filling up low places, or by erecting buildings thereon, or by making any other improvement thereon to make it fit for cultivation, or other profitable or desirable enjoyment; and it makes no difference that the effect of such improvement is to change the flow of the surface water accumulating or falling on the surrounding country, so as to either

increase or diminish the quantity of such water, which had previously flowed upon the land of the adjoining proprietors, to their inconvenience or injury. * * * The same rule would apply to waters flowing over the country, which had escaped from the banks or natural channel of a running stream of water, by reason of a flood in the stream, occasioned by heavy rains or the melting of snow upon the surrounding country. But persons exercising this right to improve and ameliorate the condition of their own land, must exercise it in a careful and prudent way. * * * He must improve and use his own lands in a reasonable way, and in so doing he may turn the course of and protect his own land from the surface water flowing thereon, and he will not be liable for any incidental injury occasioned to others by the changed course in which the water may naturally flow and for its increase upon the land of others. Each proprietor, in such case, is left to protect his own lands against the common enemy of all, * * * so as to occasion no unnecessary inconvenience or damage to plaintiff."

In the case of *Hosher v. K. C., St. J. & C. B. R. R. Co.*, 60 Mo. 329 and 333, this court affirms the *McCormick case, supra*, and after treating of natural streams employs this language: "But in the case of surface water, which is regarded as a common enemy, he is at liberty to guard against it or divert it from his premises, provided he exercises reasonable care and prudence in accomplishing that object. In the language of this court in a recent case, where this subject was carefully considered, the owner of the dominant or superior heritage must improve and use his own lands in a reasonable way, and in so doing he may turn the course of, and protect his own land from, the surface water flowing thereon, and he will not be liable for any incidental injury occasioned to others by the changed course in which the water may naturally flow and for its increase upon the land of others. Each proprietor, in such case, is left to protect

his own lands against the common enemy of all." So in the case of *Jones v. Hannovan*, 55 Mo. 462, the same doctrine is recognized, and it is there held that "a pro. prietor of land may drain surface water from his land in such way as may suit him, provided he does so in a usual and careful manner, without being responsible to others; but such water, after emptying into a stream, ceases to be surface water, and becomes a part of the stream." In the case of *Imler v. City of Springfield*, 55 Mo. 119, the same common law rule is recognized and affirmed; and in the case of *Clark's Adm'r v. H. & St. Joe R. R. Co.*, 36 Mo. 224, the court uses this language: "In the absence of any negligence, unskilfulness or mismanagement in the construction of the embankment, or the road-bed, the injury thereby done to plaintiff's property must be considered as the natural and necessary consequence of what the corporation had acquired the lawful right to do, and such damage must be taken to have been included in the compensation assessed, or it was *damnum absque injuria*."

In the recent case of *Benson v. C. & A. R. R. Co.*, 78 Mo. 504 and 512, this court, speaking through Philips, C., practically reaffirms the common law doctrine of the earlier decisions of this court in respect to surface water. After referring to natural water courses, this language is used: "But as to the right of a dominant proprietor to divert mere surface water and turn its flow upon his neighbor, there is much conflict and confusion. Each case must, in large measure, depend on its own peculiar facts; the general rule, it is true, applicable to the enjoyment of real estate, is expressed in the maxim: *cujus est solum, ejus est usque ad cœlum*. He has ordinarily the right to use and improve his real estate by protecting it against water flowing over its surface. In doing so the dominant proprietor may turn it from his land on to the servient or lower land, without liability to damages. Mere surface water, that which does not run in any defined course or confined channel, is regarded as

common enemy against which any land-owner affected by
it may fight. * * * But in doing so regard must be
had to another recognized maxim: *sic utere tuo ut
alienum non lædas.* * * * The deed from plaintiffs
concedes to this company the right to make embank-
ments, if necessary, and to construct culverts and ditches
deemed necessary for the proper grade and protection of
the road. And if in the legitimate exercise of such
right, the flow of surface water from plaintiffs' land was
obstructed, to their injury, it would clearly be a case of
*damnum absque injuria.*" In a still later case the court,
through the same commissioner, affirms and announces
the same common law rule, as to surface waters, as is
held in all the earlier cases from this court where that
doctrine is discussed. See *Stewart v. City of Clinton*, 79
Mo. 603; see, also, Angell on Watercourses (7th Ed.)
page 120, section 108, also sections 138 and 139.

The statute of this state, section 3,117, page 521, de-
clares that "the common law of England * * * shall
be the rule of action and decision in this state, any law,
custom or usage to the contrary notwithstanding." This
statutory obligation and duty has been recognized and
enforced, as we have seen, in all the earlier and later ad-
judications of this court on this subject. In fact the rule
of the common law on this subject was never questioned
in this state or departed from until the case of *McCor-
mick v. K. C., St. J. & C. B. R. R.*, 70 Mo. 359, where
the "civil law" on this subject was first stated and ap-
proved, and the succeeding case of *Shane v. Railroad
Co.*, 71 Mo. 237, where it was elaborately discussed and
adopted as the rule of action and decision in this state
on the question of the flow of surface water.

In the last two cases it was distinctly held, by a divided
court it is true, that "a land owner has no right, by
erecting an embankment, to stop the natural flow of sur-
face water or to divert its course so as to throw it upon
the land of his neighbor," thus discarding the old
common law rule on this subject, so long recognized and.

so often approved, and substituting therefor the rule of the "civil law." With all due respect for the acknowledged ability of the distinguished jurist who wrote those opinions, we feel constrained to recognize the common law doctrine on this subject, so often and repeatedly approved by this court, without division, in all its earlier and later decisions, as still the law in this state. The rule of the common law, as expounded in the numerous decisions quoted above, we think, after all, best promotes and conserves the varied and important interests of both the public and private individuals incident to and growing out of this question. It permits and encourages public and private improvements, and at the same time restrains those engaged in such enterprises from unnecessarily or carelessly injuring another. It may be added in this connection that whatever change may have been made in the common law duties and obligations of railroad companies in this particular by sec. 810, Revised Statutes, does not arise, and is immaterial in this case, since the suit is not brought for a failure to construct the ditches and drains along the sides of the road-bed required by that act, but for a failure to provide water-ways or culverts across the road-bed, or through its embankments, so as to allow the surface water to pass off in that direction. A strict and literal application of the doctrine of the "civil law" would, we think, in many places, and in large districts of country, materially retard, if not utterly destroy, many useful and profitable improvements, pursuits and enterprises besides railroading. *Lowers v. Sheff*, 15 La. Ann. 300; *Martin v. Jett*, 12 La. 503.

Numerous decisions in various other states, also, adopt and adhere to the common law as to surface water to the same extent as do the adjudications in this state. 13 Allen, 293; 27 Wis. 656; 25 Wis. 223; 31 N. J. Law R. (2 Vroom) 351; 50 N. H. 439; 58 Barb. 413; 73 Ind. 278; and 24 Albany Law Journal 453.

In accordance with these views the judgment of the circuit court in the *McCormick case*, *supra*, should have

been affirmed and not reversed and remanded by the court. And it may be said of the *Shane case*, 71 Mo. 237, that it was rightly decided "on common law principles," if the court was right in recognizing the slough in question as a "water course," within the meaning of that term, which, as shown by the opinion, it evidently did, when, in the end, it came to decide the case. The slough in the petition is spoken of as a "natural channel" from the river to the lake, and thence to the river again. The first instruction for plaintiff, on which, in the end, the case was made to turn (page 242), treated the slough as a natural drain through which the surplus water of the Missouri river in high stages usually and naturally passed; and the opinion itself, on page 251, referring to said slough and said first instruction, says that "the question as to the slough being the natural channel through which the waters of the Missouri river passed in times of floods, was put to the jury in an instruction given by the court and was found by the jury, and upon the evidence submitted they could not have found otherwise than they did." And on page 252 the court, in finally deciding the case, says that "the first instruction given for the plaintiff contained all the law necessary to enable the jury to pass upon the facts submitted; and the second and third, and the sixth given for defendant certainly cannot be complained of by defendant." It will be observed, however, by reference to page 244, that the second and third instructions, which were treated by the court as having been given for the defendant, were in fact refused, and under the view expressed in this opinion they should have been given. It is clear, therefore, if the court was right in treating and recognizing the slough in question as a natural channel or water course, within the meaning of those terms, the case was properly and rightly triable and determinable upon common law principles, without calling in the aid of the civil law, and, in that event, all that was said about the civil law was unnecessary and mere *obiter dicta*. We do not

wish, however, to be understood that the court was right in so treating the slough in question as a natural channel or water course within the meaning of that term when properly used. Indeed, we think not; but it is unnecessary, for the purposes of this case, to further pass upon that question.

The general proposition announced in the second, third and sixth instructions for plaintiff at his request, and all four of those given by the court, upon its own motion, recognize and apply, as we think, the doctrine of the civil law rather than the common law, and for that reason are erroneous. The defendant was confessedly authorized to build its road-bed and track through said low lands, and was sought to be charged only for negligence and unskilfulness in its construction; yet singularly enough, by these instructions it is held liable for simple failure to provide sufficient water-ways, without any reference to the safety and security of the road-bed and the travelling public, and without any reference to the exercise of reasonable care and skill in the construction of the same; all this, as we understand them is practically ignored in these instructions, which are as follows:

2. If the jury believe that owing to the failure to provide culverts or water gaps along the railroad track in section 3, township 53, range 36, or at any point between the bridge over Bear creek and the land of plaintiff, that water flowing out of the creek was dammed up by the railroad track and forced up the side of the railroad so as to pass upon the lands of plaintiff and destroy his crop and injure his land, he is entitled to recovery for such injury.

3. If the jury believe from the testimony that the defendant's railroad track was so constructed as to prevent the usual and natural flow of the water, and by reason of such construction the water was forced out of its natural and ordinary course and upon the lands of plaintiff by reason of which he was injured, he is entitled to recover for such damages in this action.

6.  That it was the duty of the defendant company to so construct its line of tracks as would permit the usual flow of the water, and that where, owing to embankments being constructed, to dam up or stop such flow, and it fails to construct aad keep in good order the necessary culverts or other water-ways as will pass through and carry off such water, it is liable to damages to all parties injured.

1.  The plaintiff cannot recover unless he prove by a preponderance of the evidence that the defendant obstructed the water of Bear creek by its bridge, or by a failure to provide sufficient culverts or water-ways, and that plaintiff was injured by an overflow of water caused by such obstructions.

2.  If the jury find that the damage done to plaintiff's land and crops was done by waters of Bear creek, which left the bed or channel of said stream at a point near the county bridge over the same, and that said waters were not thrown out of the channel by the railroad bridge, and that said waters were not caused to flow upon the plaintiff's lands for want of culverts and water-ways, they will find for defendant.

3.  Although the jury may find that the water of Bear creek was in fact obstructed by defendant's bridge, yet, if they believe from the evidence that such obstruction did not cause the water of Bear creek to overflow plaintiff's land, but such overflow was by reason of the channel or bed of said stream being of not sufficient size and capacity to carry the water of the stream at the time of the flooding, and in consequence of the insufficient size of the channel of said stream the water was forced out of the bed of said stream and thence flowed to and upon plaintiff, they will find for the defendant; unless they find that the water was caused to flow on plaintiff's land by reason of failure to provide culverts or water-ways.

4.  The plaintiff is not entitled to recover for any

injury occasioned by the flow of waters of Bear creek after leaving its banks; unless the defendant in the first instance caused the water to leave the channel, or unless the defendant by reason of a failure to provide culverts or water-ways caused the water to flow upon the plaintiff's land and thereby injured his land or his crops.

The giving of these instructions, therefore, was error. For these reasons, the judgment of the trial court is reversed and the cause remanded, to be proceeded with in conformity hereto.

HOUGH, C. J., CONCURRING: I adhere to the views expressed by me in my dissenting opinion in the case of *Shane v. The Kansas City, St. Joseph & Council Bluffs Railroad Co.*, 71 Mo. 253, which I think are approved by the foregoing opinion. All concur.