SUSAN C. ABERCROMBIE, Respondent, v. KANSAS CITY, Appellant.

Kansas City Court of Appeals, October 3, 1910.

1. CITIES: Damages to Property: Public Improvements. A city is liable for any damages caused by the construction of sidewalk and curbing on an established street in front of residence property on a grade fixed by ordinance, where it proceeds with the work without first taking steps to ascertain and pay damages caused by a change in the grade of said street.

Appeal from Jackson Circuit court.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*Edwin C. Meservey* and *Chas. H. Thompson* for appellant.

The city is not liable for the unauthorized acts of its contractors in placing improvements such as sidewalks and curbing above an established grade. The evidence showed that the sidewalk and curbing were without authority constructed by the contractor from six to nine inches above the established grade. McQuarter v. St. Joseph, 114 S. W. 1140; Gehling v. St. Joseph, 49 Mo. App. 430; Hall v. Trenton, 86 Mo. App. 326; Werth v. Springfield, 78 Mo. 107; Stewart v. Clinton. 79 Mo. 602.

*Coward & Ingraham, T. A. Milton* and *L. E. Durham* for respondent.

A. municipality is liable for any tort committed in the exercise of charter power and must answer in damages the same as a private individual. This has always been the law in this State. Soulard v. St. Louis, 36 Mo. 546; Dooley v. Kansas City, 82 Mo. 444; Jarboe v. City of Carrollton, 73 Mo. App. 347; Hickman v. Kansas City, 120 Mo. 110; Barton v. Odessa, 109 Mo. App. 76; Rives v. Columbia, 80 Mo. App. 173; Allison v. Richmond, 51 Mo. App. 133. The city and the individual contractors and engineers who did the work were co-tresspassers from the very beginning of the work. Consequently the city, a joint tortfeasor, cannot maintain that it should be held for only such part of the mischief done, as it actually had a hand in, and no more. Rives v. Columbia, 80 Mo. App. 177; Reed v. Peck, 163 Mo. 333; Faust v. Pope, 132 Mo. App. 294.

JOHNSON, J.—This is an action for damages alleged to have been caused by the construction of a sidewalk and curbing on an established street in front of residence property owned by plaintiff in Kansas City. A trial to a jury resulted in a verdict and judgment for plaintiff in the sum of one thousand dollars and the cause is before us on the appeal of defendant.

Material facts disclosed by the evidence are as follows: The property claimed to be damaged is known as Lot Eleven, Block Three, Mellier Place, an addition now in Kansas City, Missouri. That addition was platted by a private corporation in 1890, at a time when the land it covered was outside the corporate limits of any city. The street in front of Lot Eleven—then called Darragh avenue and afterwards Bell street—was graded and macadamized by the company; a house facing that street was built on Lot Eleven and the lot was otherwise improved. The grade of the street as paved was about

on a level with the front yard. After these things were done the addition was taken into the City of Westport (a city of the fourth class), by an extension of the corporate limits of that city and afterwards, in 1892, Westport passed an ordinance which established the grade of Bell street on a plane eighteen or twenty inches above that on which the street had been graded and macadamized. No physical changes were made in the street and the grade established by the ordinance remained a mere paper grade until 1901. In the meantime, Westport had been absorbed by Kansas City through an extension of the limits of the latter and in 1901, Kansas City passed ordinances for the construction of a sidewalk and curbing on the street in front of Lot Eleven. The ordinance for the sidewalk provided that it should "be laid to the established grade of the street" referring, of course, to the grade established by the Westport ordinance we have mentioned. There was no separate ordinance or contract for grading. The work of laying the sidewalk and curbing was let to a contractor who was paid in special taxbills. No opportunity was given plaintiff and other property-owners to have their damages, caused by the physical elevation of the street, assessed in court, nor were damages on account of the change of grade ever assessed or paid. As the contractor constructed the sidewalk and curbing they were laid to a grade 6-1.2 inches higher than that established by the Westport ordinance. After the completion of the work, Kansas City passed an ordinance reestablishing the grade of the street to make it conform to the plane on which the improvements had been laid. The result of the work was to place the grade of plaintiff's front yard over two feet below the sidewalk and the evidence of plaintiff tends to show that she was damaged in a greater sum than that allowed her in the verdict.

On behalf of plaintiff, the court instructed the jury: "You are instructed that if you find from the evidence

that the plaintiff was about December, 1901, the owner of Lot 11, in Block 3, Mellier Place, an addition now in Kansas City, Missouri, and that there was at that time on said lot a dwelling house with stone foundation and other improvements as shown by the evidence, and that prior to said time, said lot was about on grade with the surface of the street in front of same, and that on or about the 5th day of December, 1892, the City of Westport established the grade of Darragh avenue, afterwards called Bell street, so that the established grade of said street was about one and one-half feet higher than said lot; and that thereafter Kansas City, by contract confirmed by ordinance, caused the said street and sidewalk in front of said lot to be graded up above the surface of said lot, and caused to be laid on said elevated grade a sidewalk and curbstone, and by ordinance established the grade of said street at or near the surface of said sidewalk and thereby placed the said lot with its house below the grade and surface of said street and sidewalk, and that by reason thereof the market value of plaintiff's said property was depreciated, and that plaintiff was thereby damaged, then you will find for plaintiff, and assess her damages at a sum equal to the difference, if any, caused by said change of grade, between the market value of said premises, before and after said grade of said street and sidewalk was raised, if it was raised, in all not to exceed the sum of ($2,500) twenty-five hundred dollars."

The principal contention of defendant is that its demurrer to the evidence should have been sustained.

Both parties concede that the ordinance of the city of Westport establishing the grade of Bell street was valid under the provisions of the statutes governing cities of the fourth class (section 1589, Revised Statutes 1889), and that the grade thus fixed remained the established grade after the absorption of Westport by Kansas City. Further it is conceded that the charter of Kansas City (1889), Article VIII, in force in 1901,

authorized the enactment of an ordinance providing for the laying of the sidewalk and curbing on Bell street to the established grade.

Defendant argues that since an ordinance establishing the grade was enacted by Westport plaintiff's grantor "was awarded any damages resulting to the lot in question as a consequence of the establishment of the grade in front of the lot and no further or other damages could be recovered in any subsequent action by any subsequent owner for the same established grade." The conclusion of defendant does not follow of necessity from the fact that the grade was established by ordinance. The proof shows that no damages were assessed or paid the property-owners affected by the ordinance. The city left them to the remedy they would have when a physical change of grade would inflict actual injury on their property. That time came when Kansas City proceeded to lay the curbing and sidewalk to the established grade and a cause of action then inured to the property-owners for the damages sustained by them.

"A city may, by ordinance, direct a street to be graded. If it proceeds with the work and damages property without first taking steps to ascertain and pay such damage, it is a trespasser and those actively participating in the work by directing it are co-trespassers." [Rives v. Columbia, 80 Mo. App. l. c. 177; Reed v. Peck, 163 Mo. 333; Faust v. Pope, 132 Mo. App. l. c. 294.]

Under this rule the city and the contractor became co-trespassers and each incurred liability for the trespass of the other committed in the construction of the improvement authorized by ordinance. We do not think the liability of the city to respond for the trespass of its contractor was destroyed or lessened by the fact that the contractor negligently built the sidewalk and curbing on a slightly higher plane than that of the established grade. The ordinance required the contractor to conform the improvement to the established grade. His

failure so to do must be regarded as the doing of a law-
ful act in an unlawful manner. The rule applicable
to such cases thus is stated by the Supreme Court in
Hunt v. City, 65 Mo. 620:

"It is argued for the defendant however, that as the
city had no authority under its charter to commit a tres-
pass, or to order the commission of a trespass, an order
to its servants to do an act which, when performed, con-
stituted a trespass, would not make the city liable, as
both the order and the act would be *ultra vires*. This
argument fails to distinguish between the doing of an
act in its nature unlawful, or prohibited, and the doing
of an act in its nature lawful and authorized, at an
unauthorized place, or in an unlawful manner. On the
defendant's theory municipal corporations could never
be held liable for the negligent or tortious acts of their
agents and servants. As they have no opportunity to
do wrong and cannot authorize their officers or servants
to do wrong, therefore, it is argued, they can never be
held liable for injuries inflicted by them. This is an
unwholesome doctrine and is not supported either by
reason or authority. [Soulard v. City of St. Louis, 36
Mo. 546; Hickerson v. The City of Mexico, 58 Mo. 61;
Lee v. Village of Sandy Hill, 40 N. Y. 447; Dillon on
Mun. Cor., sec. 769.]"

The demurrer to the evidence was properly over-
ruled. We have examined other questions raised by de-
fendant and find that no prejudicial error was commit-
ted by the trial court. Accordingly the judgment is af-
firmed.

All concur.