M. F. CORRINGTON and Dorothy L. Corrington (Plaintiffs), Respondents,

v.

John KALICAK, d/b/a John Kalicak Building Construction Co., and University City (Defendants), Appellants.

No. 30006.

St. Louis Court of Appeals.

Missouri.

Jan. 6, 1959.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 2, 1959.

Chapman, Schwartz & Chapman, Adolph K. Schwartz, St. Louis, for appellants.

H. Jackson Daniel, Maurice Schechter, St. Louis, W. Fred Johnson, for respondents.

HOUSER, Commissioner.

■ · This is an action by the owners of ten homes in University City for damages to their respective properties caused by the acts of defendants University City and its contractor in obstructing the River Des Peres, a natural watercourse. The trial court entered an order for the separate trial of the issues as to the owners of each separate property. The case of plaintiffs Corrington, husband and wife, was tried first. Following a jury verdict for plaintiffs for $1,000 defendants appealed from the ensuing judgment.

The petition is in two counts. Count I alleges that pursuant to a contract between city and contractor for the construction of reinforced concrete bridge decks across the River Des Peres at Shaftsbury Avenue, a public street in University City, the contractor used certain false work, forms, piling and barriers, which formed and created an obstruction of the free flow of water through the watercourse; that a further impediment resulted from the accumulation of logs, stumps and debris collecting against the barriers, causing the river to overflow and cascade down Wilson Avenue, thereby flooding and damaging plaintiffs' real and personal property there located. Count II alleged the same facts but added five charges of specific negligence against both defendants. Count II was voluntarily dismissed at the conclusion of the evidence and the cause was submitted to the jury on Count I.

Defendants' answer admits the execution of the contract but denies the other allegations of both counts and sets up the affirmative defense that whatever damage plaintiffs sustained was caused by an act of God, through no fault of defendants.

Plaintiffs' residence is located on Wilson Avenue, a north and south street abutting the channel of the River Des Peres, a natural watercourse. Shaftsbury Avenue, an east and west street, intersects Wilson Avenue six houses south of plaintiffs' residence and crosses the river a short distance east of that intersection. Plaintiffs' residence is lower than the elevation at the intersection of Wilson and Shaftsbury. For many years a wooden bridge carried Shaftsbury across the river. The wooden bridge was supported by two pile bents. Each bent consisted of five pilings. Both bents extended from the bed of the river to the underneath of the bridge deck. The two bents were 12–15 inches in diameter, set transverse to the direction of the flow of water. In the exercise of its supervision and control of the river the city entered into a contract with John Kalicak to remove the wooden bridge and replace it with a reinforced concrete structure, to be built according to plans and specifications furnished by the city. The contractor took up the planks, removed the pilings and erected tubular scaffolding on which concrete forms were built. The scaffolding, made of iron pipes on the ends, reinforced in between, slipped together. The scaffolding units were welded and latticed ("X" braced) together in such a way that they were rigid. Individual scaffolding units were four feet wide and five feet long. More than 100 scaffoldings were placed under the bridge, spaced according to engineering diagrams indicating the number of pieces necessary to hold up the mass weight. The scaffolding filled up the channel the entire width and depth of the

bridge, except one opening 12 to 15 feet in diameter to let the water through. The effect under the bridge was that of a crisscross. Looking through the underside of the bridge the scaffolding "diminished the sunlight" to a certain extent. The work was subject to daily inspection by the city engineers and inspectors but the methods and means by which the contractor was to accomplish the work were not prescribed by the city but were left to the discretion of the contractor. The plans and specifications did not require the use of scaffolding. Its use was neither approved nor disapproved by the city engineer supervising the construction. The specifications did require that the support forms which were used not be removed until 14 days after the pouring of the concrete, in order to insure that the concrete harden sufficiently to bear the weight.

The concrete was poured on July 29, 1955. One hundred twenty-five cubic yards of concrete, which weighed approximately 270 tons, were poured into the forms. On August 9 the scaffolding and forms were still in place. Between 11:30 and midnight on the latter date .35 of an inch of rain fell in the vicinity. From midnight to 4:40 a. m. 2.15 inches fell. From 6:10 to 7:20 a. m. .32 of an inch fell. A total of 2.82 inches fell in 7 hours. The watershed area of the River Des Peres consists of approximately 5,200 acres. The river rose rapidly. Between 7 and 7:30 a. m. on August 10 the upstream side of the bridge scaffolding was becoming clogged with debris, timber, branches, boxes and tin cans, which could not go through the scaffolding. The water backed up, broke its bank about a half block upstream from the bridge, filled an adjacent hockey field and was being diverted into Wilson Avenue, where it was waist deep. The water was 4 feet higher on the upstream side than on the downstream side of the bridge. It was overflowing the upstream bank but not yet overflowing the downstream bank. There was considerable velocity to the flow of water. A considerable amount of water was

coming out under the bridge on the downstream side. It was "gushing" out. The debris caught in the lattice-work tubing did not form a solid block. Some of it got through, but the scaffolding and form work itself constituted an obstruction to the flow of the water, causing a backing up of water. The scaffolding left less room for water than there had been when the old pile bents were supporting the wooden bridge, i. e. while the pile bents obstructed the flow of water to some extent they did so "in a very limited way" and not so much as the scaffolding. The scaffolding acted as a screen to catch the debris. The scaffolding and the accumulation of debris thereon constituted an obstruction to the flow of water. Upwards of 75% of the underside area of the bridge was obstructed by the scaffolding and debris. The obstruction under the bridge, which was the major contributing factor responsible for the flow of water across the hockey field, down Shaftsbury and Wilson, caused the damage to plaintiffs' property. The water ran across plaintiffs' yard and into their basement and house, leaving their yard littered with silt and mud, washing out their driveway, and doing extensive damage both to their real and personal property.

Appellants first contend that the court erred in submitting the case to the jury because under the evidence and law neither appellant could be liable for damage to plaintiffs' property "caused by a sudden flash flood" following a "sudden, intensive rainfall," described as a "violent gully washer." This point must be disallowed. In order to sustain this point it would have to appear as a matter of law that the damage was not caused by the obstruction but resulted from natural causes over which appellants had no control. 93 C.J.S. Waters § 36(5) d. It does not so appear. There was direct and circumstantial evidence that the damage was caused by the obstruction. " 'When the result in part is ascribable to the participation of man , * * through active intervention * * * "the whole occurrence is thereby humanized, as

it were, and removed from the operation of the rules applicable to the acts of God." ' " Kennedy v. Union Elec. Co. of Mo., 358 Mo. 504, 216 S.W.2d 756, loc. cit. 763. There was insufficient evidence to declare as a matter of law that this flood was an act of God. An Act of God is "an occurrence due to natural causes against which ordinary skill and foresight is not expected to provide. 1 C.J.S. Act p. 923." Buschelberg v. Chicago, B. & Q. R. Co., Mo.App., 289 S.W.2d 447, loc. cit. 449. It is an event in nature so extraordinary that the history of climatic variations in the locality affords no reasonable warning of their coming. The rainfall on August 9–10, 1955, was not unprecedented in that vicinity. On August 14–16, 1946, almost 4.75 inches of rain fell in a 4-hour period. On July 5, 1948, 2.48 inches of rain fell between 7:30 and 10 p. m. Appellants themselves do not, on this appeal, claim that an act of God intervened. They refer to "similar floods" in 1946 and 1948, when they say the River Des Peres "overflowed its banks above the Shaftsbury Bridge and flooded Wilson Avenue, including the same house now occupied by Mr. and Mrs. Corrington." They refer to "the fact that the same stream has repeatedly overflowed its banks and flooded the same area prior to the reconstruction work on this particular bridge." The whole question was submitted to the jury by Instruction 6 which directed a verdict for appellants upon a finding that "there was an unexpected and extraordinary cloudburst,

freshet or flood." The jury resolved the question against appellants. There was ample evidence to support that finding.

Appellants' chief point is that the city and its contractor are not absolutely liable for placing an obstruction in a stream in the course of the construction of a bridge to carry a city street across a natural watercourse, in the absence of negligence. Respondents, contrariwise, assert that any obstruction to the flow of water in a natural watercourse resulting in injury to another person provides the basis for liability; that all that need be shown is that a natural watercourse was obstructed and that the obstruction was the proximate cause of the damages, and this regardless of the existence or nonexistence of negligence; that negligence is not an essential element of plaintiffs' case and that defendants are liable "however carefully the obstruction may have been made."

■ The facts in this case suggest several theories of liability for the damages plaintiffs claim to have suffered: (a) an action based upon negligence [1] (the theory most often relied upon in flooding cases); (b) an action based upon nuisance; [2] (c) an action invoking Article I, § 26, of the Missouri Constitution of 1945, V.A.M.S., which provides that private property shall not be damaged for public use without just compensation; [3] (d) an action based upon trespass. [4] The lawful authority of the city

1. Lucas v. City of Louisiana, Mo.App., 173 S.W.2d 629; Abbott v. Kansas City, St. J. & C. B. R. Co., 83 Mo. 271; Young v. Kansas City, 27 Mo.App. 101; Yeoman v. Kansas City, Mo.App., 18 S.W. 2d 107; Edwards v. Missouri, K. & E. R. Co., 97 Mo.App. 103, 71 S.W. 366; Brink v. Kansas City, St. J. & C. B. Ry. Co., 17 Mo.App. 177; Webb v. Carter, 121 Mo.App. 147, 98 S.W. 776; Barns v. City of Hannibal, 71 Mo. 449; Keener v. Sharp, Mo.App., 95 S.W.2d 648; Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698; Rose v. City of St. Charles, 49 Mo. 509; 8 Am.Jur., Bridges, §§ 75, 76; 56 Am.Jur., Waters, §§ 12, 26, 31, 32; 93 C.J.S. Waters § 20 a; 30 Am. & Eng. Cyc. of Law, p. 375; Farnham's Waters

and Water Rights, Vol. 2, § 568; Gould on Waters, 3d Ed., § 260.

2. Martin v. City of St. Joseph, 136 Mo. App. 316, 117 S.W. 94; Scott v. City of Marshall, 223 Mo.App. 596, 14 S.W. 2d 694; Edmondson v. City of Moberly, 98 Mo. 523, 11 S.W. 990; Hedrick v. City of St. Joseph, 138 Mo.App. 396, 122 S.W. 375; Gulf States Steel Co. v. Law, 224 Ala. 667, 141 So. 641.

3. Lewis v. City of Springfield, 142 Mo. App. 84, 125 S.W. 824; 18 Am.Jur., Eminent Domain, § 384; 30 C.J.S. Eminent Domain § 400.

4. Kennedy v. Union Elec. Co. of Mo., supra; Ferguson v. Union Elec. Co. of

to build a bridge is not controverted.[5] Defendants' lawful authority, however, could not be exercised in an unlawful manner. In the construction of an authorized bridge the city and its contractor had no right to commit a trespass. They could proceed only within the limits of the city's authority, which did not extend to the commission of a trespass. In building the bridge, they were not authorized to obstruct the flow of water in the river, a natural watercourse, in such a manner as to cause an overflow to the damage of another's premises. 63 C.J.S. Municipal Corporations § 882 c (1), p. 272; McQuillan on Municipal Corporations, 3d Ed., Vol. 18, § 53.133. Such obstruction and diversion of the water was wrongful. The inundation of plaintiffs' premises by the overflow waters constituted a direct invasion of plaintiffs' property rights—a trespass. For misfeasance within the scope of its powers a city may be liable in an action of trespass for direct injury to property, Abercrombie v. Kansas City, 149 Mo.App. 539, 131 S.W. 129; Dooley v. City of Kansas, 82 Mo. 444; Allison v. City of Richmond, 51 Mo.App. 133; 63 C.J.S. Municipal Corporations § 772, not on the theory of neglect in the performance of a corporate duty, but in tort for the doing of a wrongful act causing a direct injury to the property of another. While a trespass often arises out of or is accompanied by an act of negligence, liability for trespass may be wholly independent of any act of negligence. Negligence is by no means a necessary element in trespass and liability may be imposed for damage to property naturally and necessarily resulting from trespass, regardless of negligence.[6] Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 253 S.W.2d 158; Mawson v. Vess Beverage

Co., Mo.App., 173 S.W.2d 606; 87 C.J.S. Trespass § 4, p. 958.

Plaintiffs' petition, Count I, is not based on negligence, nuisance, lack of authority, or Article I, § 26, of the Constitution, but sounds in tort, in the nature of trespass, on the theory that certain forms and structures used in the construction of the bridge formed an obstruction to the free flow of water through the river, resulting in a further impeding of the waters by the collection and accumulation of debris piling up against the barriers, thereby causing the waters to overflow and flood plaintiffs' property. Plaintiffs' allegations are sufficient to support a recovery of damages for trespass, irrespective of defendants' negligence. In Ferguson v. Union Elec. Co. of Mo., Mo. Sup., 282 S.W.2d 505, it was held that paragraphs 7 and 8 of the petition, which charged that the dam slowed the natural flowage, causing the beds of the river and its tributaries to fill, decreasing their water-carrying capacities and contributing to cause the water in flood times to back up and overflow plaintiffs' lands "clearly alleged facts, proof of which would support a recovery for damages for trespass irrespective of defendant's negligence," 282 S.W.2d loc. cit. 510, and that plaintiffs could have submitted their case on the theory of trespass. The similarity between said paragraphs 7 and 8 and the instant petition, in which plaintiffs charge that the structures obstructed the flowage and collected debris, thereby further impeding the flow, causing the waters to overflow plaintiffs' land, is obvious. Plaintiffs' evidence sufficiently proved the charge of trespass, so that the court did not err in submitting the case to the jury under Count I.

Mo., Mo.Sup., 282 S.W.2d 505, loc. cit. 510, 511; Abercrombie v. Kansas City, 149 Mo.App. 539, 131 S.W. 129; Dooley v. City of Kansas, 82 Mo. 444; Allison v. City of Richmond, 51 Mo.App. 133.

5. See Abbott v. Kansas City, St. J. & C. B. R. Co., 83 Mo. 271, loc. cit. 276, 277, for a statement, by way of dictum, of the liability without proof of negligence of a private corporation for flooding damages sustained by a land owner in the course of the construction of a bridge *not authorized* by law.

6. Nor is it necessary to allege that the acts complained of were negligently done in a petition based on *nuisance*. Blydenburgh v. Amelung, Mo.App., 309 S.W. 2d 150.

■ Appellants claim that "except in the case of a dam intentionally constructed as such" negligence is the absolutely essential element of a cause of action. While in the case of a dam the obstruction of water is intentional, in contrast to the instant situation, in which there was no such intent, there is no difference in principle which would lead to the imposition of liability without negligence in the former case and relief from liability in the absence of negligence in the latter. Liability for damages for causing the overflow of the waters of a natural watercourse by reason of an obstruction is not based upon intention to obstruct the water (except in the rare case of a malicious intent to injure the property of another). Nor is the mere impounding of water the foundation of the action. The basis of liability is the fact that the obstruction causes the water to overflow, encroach upon and inflict special damage to the property of another. It is the impounding of the waters to such an extent that an overflow occurs and a trespass results—a wrongful act—which fixes liability. Whether the impounding of the waters is intentional or accidental, whether the overflow is caused by negligence or without negligence, the agency obstructing the flow and causing the overflow of the waters of a natural watercourse to the damage of adjacent property owners is liable for its misfeasance in an action of trespass.

■ Appellants further claim that the construction of the bridge was required in the public interest; that it could not be built without some kind of obstruction being placed in the river for support; that if this verdict is permitted to stand it means that every governmental authority or private corporation or individual which undertakes to construct a bridge over any natural watercourse in this state will be absolutely liable for damages caused to property by flooding regardless of negligence, intensity of the rainfall or of the precautions taken. If defendants desired to invoke the defense that the damage was unavoidably done (i. e. that public necessity required the building of this bridge; that in constructing the bridge a trespass was necessary and inevitable; that the bridge could not have been built without erecting the scaffolding-obstruction and that no matter how carefully or skillfully defendants may have acted or what methods or means they may have adopted, plaintiffs' premises inevitably and unavoidably would have been flooded upon the occurrence of a heavy rainfall) they should have pleaded the defense. A defendant in trespass must affirmatively plead and prove matters in justification. Schmidt v. City of Tipton, Mo.App., 89 S. W.2d 569; 87 C.J.S. Trespass § 80. Whether the aforesaid allegations would constitute a good and valid defense of justification is not before us and we are not deciding that question, but in view of the fact that nine cases arising out of this same factual situation await the outcome of this appeal we point out that the fact that this was a public work is not sufficient to excuse a trespass committed in the course of the work, 87 C.J.S. Trespass § 52 a; that the fact that University City was authorized by general law or charter to build bridges would constitute no defense to the commission of a trespass unless the city showed that it had acted within its authority, 38 Am.Jur., Municipal Corporations, § 630, and that it must appear that by their authority defendants were justified in adopting the method employed to carry out the authority, and that their authority justified the particular act done. 87 C.J.S. Trespass § 54. Also noteworthy is the case of Hyre v. Becker, Mo.App., 18 S.W.2d 137, 139, in which a contractor, sued for trespass committed in the course of the construction of a city sewer, imposed the defense that it "was necessary as a public improvement to build the sewer," and that the trespass was necessary. In its opinion the Kansas City Court of Appeals observed that there was no evidence that it was necessary to put the dirt on plaintiffs' land as an incident to the digging of the ditch and held that even if the city had authorized or directed the trespass it would have been no defense to the commission of a positive wrong.

These affirmative defenses, whether tenable or untenable, were not raised in the instant case. Except for a general denial, defendants pleaded only the defense of Act of God. Matters constituting an avoidance or affirmative defense must be specially pleaded. Section 509.090 RSMo 1949, V.A.M.S. Nor were such issues tried by express or implied consent of the parties so that we could consider them in all respects as if they had been raised in the pleadings. Section 509.500 RSMo 1949, V.A.M.S. It is true that plaintiffs introduced testimony that it would have been possible to construct a new bridge without the scaffolding, by cutting off the old bents low enough to take care of the support for new form work, by placing a new beam across the tops of all four pilings, lowering the original deck beams to rest on the new beam, and building the forms for the concrete on top of the original deck beams. Defendants countered that some desultory testimony that the alternative method proposed was not practical; that other bridges in the community had been built in the same manner in which defendants proceeded, and that this is the modern method. There was no evidence that it was necessary to use scaffolding or that there was no other method and that the bridge could not be built without the use of this type of scaffolding or that the damage in this case was unavoidable or merely incidental to the proper construction of the bridge.

For the reasons given it is the recommendation of the Commissioner that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

RUDDY, P. J., and ANDERSON and WOLFE, JJ., concur.