COUSINS v. HANNIBAL & ST. JOSEPH R. R. Co., *Appellant.*

1. **Railroad:** LIABILITY UNDER THE STATUTE FOR KILLING STOCK. A railroad company is not liable under the 43 section of the railroad law (Wag. Stat., p. 310), for stock killed upon its track within the limits of an incorporated city, (*following Edwards v. Hann. & St. Jo. R. R. Co., ante* p. 567).

2. ———: ———: MASTER AND SERVANT: PLEADING. A railroad company is not liable under the 5th section of the damage act (Wag. Stat., p. 520), for stock killed by one of its locomotives which was at the time being used by a servant of the company without authority, for his own purposes, and outside of the line of his employment.

   This defense need not be specially pleaded, but may be given in evidence under the general issue.

*Appeal from Hannibal Court of Common Pleas.*—HON. JOHN T. REDD, Judge.

The 5th section of the damage act is as follows: When any animal or animals shall be killed or injured by the cars, locomotive or other carriages used on any railroad in this State, the owner of such animal or animals may recover the value thereof in an action against the company or corporation running such railroad, without any proof of negligence, unskillfulness or misconduct on the part of the officers, servants or agents of such company;

but this section shall not apply to any accident occurring on any portion of such road that may be inclosed by a lawful fence or in the crossing of any public highway. Wag. Stat., p. 520.

*Thomas H. Bacon* for respondent.

1.   Where one of two parties must lose by the default, miscarriage or negligence of a third person, the loss must fall on the one who furnished the agencies for unlawful damage.   It was the duty of appellant to hire men who would do their duty.   The appliance which did the damage was a locomotive engine and tender owned and possessed by appellant.   The two men who ran the engine were defendant's servants.   One of them was at his post of duty, on and in charge of the engine.   The other was a superior officer, having a right to be on the engine.   Of all appellant's employees, not one else had any right to be on or in charge of said engine.   The respondent had no voice in the appointment of these servants, no means of disciplining them by discharge or by deducting from their wages the cost incurred by their negligence.   The appellant should have not put such persons in charge of such dangerous machinery.   The two servants were on the engine "in the course of the appellant's employment."   Whether they were running the engine in the course of such employment is a question arising on their mental purpose.   Servants cannot be allowed to hold court in their own hearts and adjudicate their master's liability.   *Garretzen v. Duenckel,* 50 Mo., 104; *Harriman v. Stowe,* 57 Mo., 93; *Snyder v. Hannibal,* 60 Mo., 413.   In the latter case the parties injured were themselves committing unlawful or negligent acts.   Here the animal killed was lawfully on the railroad track.   *Gorman v. Pacific,* 26 Mo., 441; *Clark v. Hannibal,* 36 Mo., 202; *Hannibal v. Kenney,* 41 Mo., 271; *Tarwater v. Hannibal,* 42 Mo., 193; *McPheeters v. Hannibal,* 45 Mo., 22.   As to master's liability see further, *Gass v. Cob-*

*lens,* 43 Mo. 377 ; *Hillsdorf v. St. Louis,* 45 Mo. 94; *Perkins v. Missouri,* 55 Mo. 201 ; *Doss v. Missouri,* 59 Mo. 27, p. 33.

2.   The appellant's proposed declarations of law about its liability for acts of its servants, were aside from the case, because the answer denied that the locomotive was in charge of appellant's servants, when the evidence showed that the locomotive was in charge of its servants, and the defense attempted, was on the ground that the servants had no business to be running the locomotive.

*James Carr* and *H. B. Leach* for appellant.

It was no part of Wilbur's duty to operate or run engines, or to direct their operation or running after they left the round house ; and the yard master only had charge of engines, after the regular engineers and firemen had run the engines in off the main track upon one of the yard tracks.   The position of neither authorized or required him to run engines on the main track.   No officer of the appellant who had any authority to run, or direct or control the running of engines, authorized either the foreman of the round house or the yard master to run the engine. which struck the mule in controversy, out on the main track.   The former acted as engineer and the latter as fireman, entirely of their free will and accord, without leave or license from the appellant.   They were trespassers in doing what they did, just as much as an entire stranger would have been, if he had run the engine out without leave or license.   The act was entirely unauthorized, and being so, the respondent is not entitled to recover.   *Flower v. Penn. R. R. Co.,* 69 Penn. St. 210; *Welden v. Harlem R. R. Co.,* 5 Bosw. 576; *Mitchell v. Crassweller,* 13 C. B. 237; *Aycrigg v. N. Y. & E. R. R. Co.,* 1 Vroom 460; *Haack v. Fearing,* 35 How. Pr. 459 ; Shearm. & Redf. on Neg., § 63 ; *Garretzen v. Duenckel,* 50 Mo. 111; *Howe v. Newmarch,* 12 Allen 49; *Foster v. Essex Bank,* 17 Mass. 479; *Douglass v. Stephens,* 18 Mo. 362.

HOUGH, J.—This was an action under the 5th section of the damage act to recover the value of a mule killed by an engine of the defendant within the corporate limits of the city of Hannibal, in August, 1873. The views of this court in relation to the liability of railroad companies for animals killed by their engines and cars, within the corporate limits of towns and cities, were definitely expressed in the case of *Edwards v. The Han. & St. Jo. R. R.*, and *Elliott v. Same*, decided at the present term, and need not be repeated here.

The principal question in this case is whether, under the circumstances disclosed by the evidence, the defendant is liable for the acts of the servant who managed the engine by which the animal in question was killed. This servant was introduced as a witness, and his testimony, which is uncontradicted, is as follows: " I was in defendant's employ at the time plaintiff's stock was killed; I was superintendent of the round-house; my duty was to see that the engines and tenders were kept in good running order and properly housed and taken care of; I had been acting in this capacity six or seven years; it was no part of my duty to run an engine on the road; was at the time of the injury in the employ of the company as yard-master of the round-house yard; there are a number of tracks in the round-house yard connecting with the main track and leading to the different engine stalls in the round-house. When a train arrives from the west, the engine and tender is run by the regular engineer from the main track on to one of yard tracks and left standing on the yard track, abandoned by the regular engineer and fireman; it was then the duty of the yard-master of the round-house yard to take charge of it and run it into its proper stall in the round-house, where I took charge of it. When an engine was needed for a train going west, it was the duty of the yard-master to run it from its stall to its position on one of the yard tracks, and it was in his charge until the regular engineer

and fireman took charge of it to run in on one of the main tracks. About 3 or 4 o'clock of the morning of the accident, one of my neighbors, in the employ of the company, was taken sick with an attack of cholera; the doctor lived near the line of the road in the west end of the city, about two and a half miles west from the round-house; a train had come in from the west, and the engine and tender had been run by the engineer on one of the tracks in the round-house yard; knowing that I could go for the doctor quicker by going out on an engine than any other way, I went to the engine standing on the track of the round-house yard, the regular engineer and fireman had left, and the yard-master was in charge of it; he and I got on the engine and run it on the main track, and started for the doctor, I acting as engineer and he as fireman; we ran the tender foremost at a rate of speed of about eight miles an hour; the bell was rung by the yard-master from the time we started until the animals were struck; I did not see the animals until they were struck by the tender; I had no authority from the defendant to take the engine to go for the doctor; we took it without defendant's knowledge or consent; Mr. ————, the yard-master, is now in the State of Mississippi." The court instructed the jury that the foregoing facts would not exempt the defendant from liability.

There can be no controversy about the general rule, that the master is civilly liable for the tortious acts of his servant, when done in the course of his employment, even though the master did not authorize or know of such acts, or may have disapproved or forbidden them. *Garretzen v. Duenckel*, 50 Mo. 107; *Snyder v. Hann. & St. Jo. R. R. Co.*, 60 Mo. 413. The chief difficulty which has arisen in the application of this rule, as was remarked in *Snyder v. Hann. & St. Jo. R. R.*, has been in ascertaining whether the act complained of was committed in the course of the servant's employment. In *Garretzen v. Duenckel, supra*, it was said: "In determining whether a particular act is

done in the course of a servant's employment, it is proper first to enquire, whether the servant was at the time engaged in serving his master. If the act was done while the servant was at liberty from his service, and pursuing his own ends exclusively, there can then be no question that the master is not responsible, even though the injuries complained of could not have been committed without the facilities afforded by the servant's relations to his master." Two classes of cases have arisen under the rule now being considered, in which the master is not liable for the acts of his servant. The first is where the servant was, at the time the injury was inflicted, engaged in the performance of the service which he had engaged to render, but the act which occasioned the injury did not pertain to the particular duties of that employment. Thus, if an engineer while running a train should shoot an unoffending man upon the road side, the injury would be inflicted while the engineer was engaged in serving his master, but the act causing the injury would have no connection with that service, and could not be considered as done in the course of the servant's employment. The other class is, where the servant was not engaged about the business of the master, at the time he did the injury complained of, but was upon business of his own, or another, totally disconnected from the service which he had engaged to render. The case at bar falls within the latter class. Wilbur's whole duty was to keep the engines in order, and properly housed. He had no authority whatever to take them out for any purpose. He had no more right to go upon the main track with one of them than he would have had if he had been an entire stranger to the defendant, and the defendant cannot be held responsible for the injury resulting from such unauthorized use of its property.

The case of *Mitchell v. Crassweller*, 13 Com. Bench, p. 236, is identical. in principle with the case at bar, and somewhat similar in its facts. There it appeared that the defendants were iron-mongers, carrying on business in

Welbeck street, London, and were possessed of a horse and cart, with which their carman had, on the day mentioned in the declaration, been out to deliver goods. Returning home at a late hour in the evening, the carman drove up to the shop door to get the keys of the stable, for the purpose of putting up the horse and cart. Having got the keys, the carman was about to proceed to the stable which was in an adjoining street, and within five hundred yards of the shop, when the defendant's foreman, who was unwell, asked him to drive him a part of his way home; whereupon the carman went to the house for the purpose of asking permission of one of his employers, but not finding either of them at home, returned to the foreman and observing that "he would chance it," he drove him as far as Euston square. In returning thence to the stable, he accidentally ran over the plaintiffs. Maule, J., said: "The defendant's carman, having finished his business, had nothing further to do but to drive the horse to the stable. At the time of the accident he was not going a roundabout way to the stable, or, as one of the cases expressed it, making a detour. He was not engaged in the business of his employers; but, in violation of his duty, so far from doing what he was employed to do, he did something totally inconsistent with his duty; a thing having no connection whatever with his employer's service. The servant only is liable, and not the employers. All the cases are reconcilable with that. The master is liable even though the servant, in the performance of his duty, is guilty of a deviation or a failure to perform it in the strictest and most convenient manner. But where the servant, instead of doing that which he is employed to do, does something which he is not employed to do at all, the master cannot be said to do it by his servant, and therefore is not responsible for the negligence of the servant in doing it," and the other judges were of the same opinion. It was further held, in the same case, that the defense, that the servant was not at the time of the injury engaged in his master's

business, could be made under the general issue. And we are of opinion that this defense was admissible under the pleadings in this case. The petition alleged that the engine was, at the time of the accident, in charge of the defendant by its agents and servants. This was denied in the answer. *Pro hac vice* Wilbur was neither the agent nor the servant of the defendants, and the defendant is not liable. The judgment is reversed. The other judges concur.

REVERSED.