SARAH E. HINDS AND HUSBAND, Respondents, v. CITY OF MARSHALL, Appellant.

Kansas City Court of Appeals, May 10, 1886.

1. MUNICIPAL CORPORATIONS—LIABILITY FOR SAFE STREETS—ACTIONABLE NEGLIGENCE.—Where a street is rendered unsafe for travel by the *direct* act of the city, the city will be held liable in those states (of which this state is one), in which an implied municipal responsibility is recognized for unsafe streets. The principle that actionable negligence cannot be predicated of the plan itself (applicable to cases of improvements optional with the city to undertake, involving a *quasi* judicial discretion), does not go so far as to exempt from liability, if that plan leaves the street in an unsafe and dangerous condition for public use.

2. PRACTICE—INSTRUCTION—"AGE AND CONDITION IN LIFE"—CASE ADJUDGED.—Where, as in this case, the jury were instructed that, in estimating the damages they should take into consideration the "age and condition in life" of the plaintiff, as well as other considerations. *Held*, that while *age* may be a proper element in cases of injuries *permanent* in character, where there is sufficient evidence on which to predicate an instruction, it was not warranted

here. *Held, further,* that the phrase, "condition in life" is misleading and vicious as applicable to the *facts of this case.*

APPEAL from Lafayette Circuit Court, HON. JOHN P. STROTHER, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action for damages for personal injuries received by plaintiff, Sarah Hinds, by falling into a ditch on one of the streets of the defendant, a municipal corporation. Suit was brought in the Saline circuit court. On a trial there had before a jury, the plaintiff was awarded one cent damages. The court granted a new trial; and, on application of plaintiff, a change of venue was awarded to the Lafayette circuit court, where the plaintiff recovered judgment for the sum of fifteen hundred dollars. From this judgment the defendant prosecutes this appeal.

The petition avers that the plaintiffs are husband and wife, and the defendant is a municipal corporation of the fourth class; that, as such corporation, it has jurisdiction and control over its streets, and it is its duty to keep the same in good and safe condition for travel, etc. Among its streets is one designated as Lafayette street; and on or about the twenty-first day of August, 1883, the defendant dug a ditch across said street, where it intersects Yerby street, which ditch was about three feet deep and four feet wide; that defendant, disregarding its duty, left said ditch uncovered and unguarded, without anything to warn passers of its condition; and that on the night of the twenty-first day of August, 1883, the plaintiff, Sarah Hinds, while passing along said street, in the exercise of due care, fell into said ditch, by reason of its unsafe and dangerous condition; whereby she was greatly injured, etc.

The answer, *inter alia,* interposed, as a special defence, that said ditch was not so deep and wide as al-

VOL. XXII—14

leged; and that the same was so dug, not across said street, but along side of the same, pursuant to the directions and plans devised therefor by the street commissioner of the defendant; and was designed to drain off the surface water running on said street; that the same was dug on the side of the street, leaving ample room, of about forty feet, for persons to pass along the street, without any necessary exposure to. said ditch. It also avers that plaintiff had notice of the proximity of the ditch to the street, and that she so fell into the same from want of due care, etc.

Plaintiff's evidence tended to show that she had passed along this street just before dark, on the night of the injury, on her way to church. There was no sidewalk on this street and pedestrians were accustomed to using the street as a passway. On her return from church she fell into this ditch and was hurt. The ditch was not so wide or deep as to make it necessarily dangerous. Plaintiff testified that she had not observed the ditch on passing there on her way to church, and that, in attempting to step aside, in order to avoid a muddy point, she fell into the ditch. The night was dark. Her injury was not serious. There was a fracture of a small bone of the leg; but no physician was called to treat it. She was confined for several weeks to her bed, and has ever since realized some inconvenience from the injury.

The defendant's evidence showed that the ditch was dug under directions of the street commissioner, to whom, by ordinance of the city, was committed the care and control of the streets, etc. The ditch was dug pursuant to plans devised by the commissioner.

H. M. HARVEY and DAVIS & WINGFIELD, for the appellant.

I.  The damages given by the jury are excessive.

II.  The *seventh* instruction for plaintiff lays down a measure of damages not supported by the evidence; that is to say, "to take into consideration the age and

condition in life of plaintiff," when there was no evidence in the case showing how old plaintiff was, or what was her condition in life.

III. The city was not liable for any mistake of judgment made by its street commissioner, in planning or constructing the ditch complained of, and the *fifth* instruction asked by defendant should have been given. *Detroit v. Beckman*, 34 Mich. 125; *City of Lansing v. Toolan*, 2 Am. Rep. 510, and note; *Imler v. Springfield*, 55 Mo. 119.

IV. The instructions given for plaintiff are *misleading* in this, that they leave the jury to infer that it was obligatory upon defendant to keep the *whole of the street* in traveling condition, while the evidence showed that that part of the street which was *usually* traveled was kept in safe condition. *Brown v. Glasgow*, 57 Mo. 156.

BOYD & SEBREE and DRAFFEN & WILLIAMS, for the respondents.

I. The *seventh* instruction for plaintiffs properly declared the law as to the measure of damages. *Russell v. Columbia*, 74 Mo. 480; *Loewer v. Sedalia*, 77 Mo. 431. There *was* evidence tending to show the age and condition of life of the plaintiff. Her daughter was a witness at the trial, and testified to being twenty-three years old. So the physician Baldwin. In addition plaintiff was a witness before the jury, and they could judge of her age and condition in life.

II. The court properly refused the *fifth* instruction asked by the defendant. It states in substance that unless *there was negligence in the plan*, the finding must be for the defendant, and the fact that plaintiff fell in does not show negligence in the plan. The *plan* of the ditch is of no importance in considering the city's negligence, for if the city knowingly left the street in an unsafe condition, whether from the *plan* or the *execution*, whatever the cause, the negligence is actionable. 2 Dill. Mun. Corp. (3 Ed.) sect. 1024, note; *Loewer v. Sedalia*,

*supra; Russell v. Columbia, supra; Bassett v. St. Joseph,* 53 Mo. 290; *Blake v. St. Louis,* 40 Mo. 569.

III.  The *fifth* instruction assumes a position wholly untenable, and the authorities cited do not sustain it. The law of *Detroit v. Beckman* (34 Mich. 125), *is not the law of this state.* (See authorities heretofore cited in I and II paragraphs). In *Michigan* there is no implied municipal responsibility for unsafe streets.  So as to the case of *Lansing v. Toolan,* which is also a Michigan case. See Dillon Mun. Corp. (3 Ed.) sect. 1024, note.  The case of *Imler v. Springfield* has no *application.*

IV.  The instructions for plaintiff are not misleading and could not have misled the jury.  The fact of negligence, whether with the ditch the street was safe for travel, was expressly left to the jury to determine.  *Staples v. Canton,* 69 Mo. 592.  The case of *Brown v. Glasgow,* 57 Mo. 156, is distinguishable.

V.  The damages are not excessive.  This court will not interfere unless the damages are *flagrantly* excessive, or the jury has been influenced by passion, prejudice, or partiality.  *Goetz v. Ambo,* 27 Mo. 28; *Kennedy v. Railroad,* 36 Mo. 351.

PHILIPS, P. J.—The only questions, important to be considered on this record, are as to the action of the trial court in giving and refusing instructions.  Appellant complains of the refusal to give the following instruction :

"If the jury believe from the evidence that Charles Baldwin was street commissioner of the city of Marshall at the time the ditch in question was dug, and that, as such officer, he planned said ditch and superintended the digging of said ditch, and that said ditch was dug according to the plans made by him, then the finding must be' for the defendant, unless the jury believe from the evidence that said ditch was negligently or carelessly planned, and the mere fact that the plaintiff may have

fallen into such ditch will not warrant the jury in finding that said ditch was negligently planned or constructed.''

The contention of appellant's counsel is, that as the act of the street commissioner in devising the plan for the drainage of the street was a legislative, or *quasi* judicial act, the municipality, as such, is not answerable in damages for any injury resulting therefrom, unless the plan itself was defectively executed, of which fact there was no proof. In support of this proposition reference is made to the following adjudications: *City of Detroit v. Beckman*, 34 Mich. 125, and other decisions of the same court, and *Imler v. City of Springfield*, 55 Mo. 119.

I. It is to be conceded to appellant that the ruling of the Michigan court sustains its contention. But we are of opinion that such is not the recognized doctrine in this and other states, where jurisdiction and control over the streets and their improvement are conferred upon the municipal government, which carries with it the concomitant and imperative duty and obligation to keep its streets and sidewalks free from obstructions, and in a reasonably safe condition for the use of passers over them. Dillon in his work on Municipal Corporations, vol. 2 (3 Ed.) p. 1046, note 1, after citing the Michigan case, observes: ''It seems to the author, as he understands the facts, that the case is one where the street was rendered unsafe for travel by the direct act of the city, and that the city would be held liable in those states in which an implied municipal responsibility is recognized for unsafe streets, which, however, is not the case in Michigan.'' Again he observes: ''Does the principle that actionable negligence cannot be predicated of the plan itself go so far as to exempt from liability if that plan leaves the streets in an unsafe and dangerous condition for public use? In the author's opinion this question ought to be answered in the negative.''

Such also is the view taken by Thompson on Negligence, vol. 2, p. 736, note 9.

The doctrine invoked by appellant applies to the in-

stance of providing drainage, or sewerage, and the like,. for surface water. These are improvements which the city may or may not undertake. When it does enter upon them, the act is peculiarly legislative; the manner of making the same requires the exercise of judgment, in its nature *quasi* judicial. And when the legislative body thus adopts what it conceives to be the best plan for effectuating the object, according to the means at its disposal, it must follow that the municipality cannot be held civilly liable for any defect in the plan so devised, for injuries resulting therefrom to any adjacent proprietor. 2 Dill. Mun. Corp., sect. 1046; *Stewart v. City of Clinton*, 79 Mo. 611, 612. And this was all that was decided, pertinent to this issue, in *Imler v. City of Springfield*, 55 Mo. 119.

But as the further and imperative duty rests upon the corporation to protect its streets and sidewalks from dangerous nuisances and obstructions, and to keep them in a reasonably safe condition for use by the public, by day and by night, it would be an absurd contradiction to say that it might determine on a plan for the improvement of its streets, which would expose the public to perils and dangers of life and limb by digging yawning ditches along and about its highways, and leave them unprotected and unguarded, and without any danger signals, to entrap the unwary, and often the most vigilant at night.

The law is well settled in this state in accord with the view expressed by Dillon, *supra; Loewer v. City of Sedalia*, 77 Mo. 431; *Oliver v. City of Kansas*, 69 Mo. 79; *Beaudean v. City of Cape Girardeau*, 71 Mo. 393;. *Russell v. Inhabitants of Columbia*, 74 Mo. 480.

It is observable that the petition counts on the negligence of defendant in leaving the ditch exposed, without guards or warning signals. And the defendant itself, in its third instruction, recognized the right of plaintiff to recover on this ground.

II. The most serious question arises on the following instruction given by the court in behalf of plaintiff:

"If the jury find for the plaintiff, in estimating the damages, they will take into consideration not only her age, and condition in life, the physical injury inflicted, and the bodily pain and mental anguish endured, but, also, such damages as appear from the evidence will reasonably result to her, from such injuries, in the future, in all not exceeding the sum of five thousand dollars."

It tells the jury, in estimating the damages, to take into consideration "the age and condition in life" of the plaintiff.

It may be conceded that the age of the plaintiff may be a proper element for the consideration of a jury in estimating damages for personal injury, where the evidence tends to show that the injury will probably be permanent in its character. But an instruction should not be given where there is not sufficient evidence on which to predicate it. *State ex rel. Fulkerson v. Emerson*, 74 Mo. 607; *Price v. Ry. Co.*, 76 Mo. 508; *State v. Thompson*, 83 Mo. 257.

I fail to find in this record any evidence of the plaintiff's age to guide the jury in forming a correct judgment. Plaintiff concedes there was no direct proof, but suggests there was proof showing that she had a daughter twenty-three years old. It may be conceded that this fact might justify the inference by the jury that plaintiff was not under forty years of age. But they could as well infer that she was not over seventy. There is, then, a period of thirty years left by this evidence over which the jury may roam at will. Where a party would seek to recover on a given fact he assumes the burden of presenting tangible proof, and should not leave the jury in so wide a field of conjecture.

But, say the learned counsel, the plaintiff was present before the jury, and from this personal view they could form a reasonable opinion of her age. This again leaves an important fact to mere speculation.

The achievements in millinery decorative art, to say

nothing of the known power of cosmetics, have attained such a degree of perfection in our civilization, as to make appearances, at times, too deceptive to predicate a rule of evidence on such profert in court. These arts possess a sort of alchemy, which, while it may not have been practiced in this instance, can transmute deformity into shape, decrepitude into apparent robustness, and furrows, worn by care and time, into the smoothness of rosy youth.

What is meant by the words, "condition in life," as employed in this instruction, is not apparent. In *Thomas v. Wabash, etc., Ry. Co.* (20 Mo. App. 485), the expression, "situation in life," employed in an instruction where the plaintiff was a married woman, was held, by a divided court, not to be error. But it is observable that it was justified on the ground that, in view of the character of the evidence on which it was presumed to have been based, the jury could only have inferred that it referred to the woman's physical injury, and not to her ability to work, or earn a livelihood, for which the husband alone could sue.

But in the case under review, there is no proof to justify even this limitation of the term, "condition in life."

The further language of the instruction quite clearly shows that the term could not refer to her physical injury, bodily pain, mental suffering, or future infirmity, for all these are specially enumerated as aggravations of the damages in addition to her age and "condition in life."

So it becomes glaringly apparent that the jury were left to grope in the dark, and to conjecture the meaning of her condition in life. They might imagine that it referred to her poverty, or her wealth, or her social *status*, or her ability to work and earn a livelihood. It was manifestly misleading and vicious.

We deem it opportune to say, in view of the fre-

quency of this instruction appearing in like cases, since the opinion in *Russell v. Columbia, supra*, that it is evident counsel have copied it from the *Russell case*. They seem to forget the fact that the plaintiff in that case was *feme sole ;* whereas, they were re-producing it where the injured party is *feme covert*.

In *Dolan v. City of Moberly* (17 Mo. App. 436), this same instruction was followed. The plaintiff was a married woman ; and it is now suggested that this court approved it, at least *sub silentio*. That instruction is so glaringly bad, as applied to a married woman, that it is but just to the judge who wrote it, and his associates who concurred in the result, to say that no point was made by counsel on its infirmity, and the attention of the court, as the majority and minority opinions indicate, was not called to it. It would be well for the profession and the trial courts to avoid such instructions in similar cases, for they are not to be encouraged. We cannot say what effect this instruction had upon the jury in estimating plaintiff's damage. The first jury estimated her damage at one cent, while the last valued it at $1,500. We confess that the evidence fails to satisfy us that some undue influence did not operate upon the mind of the jury in awarding the plaintiff so much compensation for an injury, which was not so grave as to have induced her to call a physician to treat it.

For the error contained in the instruction, last reviewed, the judgment of the circuit court is reversed, and the cause remanded. All concur.