ELIZABETH J. YOUNG AND DAVID YOUNG, Respondents, v. THE CITY OF KANSAS, Appellant.

**Kansas City Court of Appeals, June 6, 1887.**

1. CHARTER OF KANSAS CITY—DUTY OF COMMON COUNCIL AS TO CUL-VERTS.—Under section 1, article 3, and section 1, article 8, of the charter of the City of Kansas (Acts 1875, pp. 203, 204), relating to culverts and the grading, etc., of streets, the charter does not require the common council to prescribe the dimensions of the culvert in controversy here. The ordinance of the city, under the charter, properly conferred upon the city engineer the power to determine such dimensions.

2. —— Distinction Between the Ministerial and Judicial Duties of a Corporation Before and After Work Ordered. Although the duty of a municipality to improve its streets is a judicial one, which it, in its discretion, may determine to exercise, or not exercise, the duty of the municipality in doing the work when determined upon, in the case of work upon streets, is to protect the streets and sidewalks from dangerous nuisances and obstructions, and to keep them in reasonably safe condition for use by the public by day and night.

3. —— — Power of a City With Respect to Natural Streams and Surface Water.—There is a wide difference between the power of a city with respect to natural streams and surface water. It has not the right, with respect to natural streams, to injure the property of others by badly-constructed and insufficient culverts, or passage-ways, obstructing the free flow of water, and a liability would exist against it for filling up, or damming back, a stream, so that it would overflow its banks and flow upon the land of another, but a very different rule exists as to surface water. And an express provision of the charter, in this case, giving the power to the common council "to establish, alter, and change the channel of water-courses, and to wall them up and cover them over," cannot be held to authorize the common council to disturb any vested rights. *Barnes v. Hannibal,* 71 Mo. 449.

4. Practice—Pleading—Issues Raised by General Denial.—In an action for negligence, by which property or the person is injured, the fact that the injury results from the negligence of the defendant is put in issue by the general denial, and, hence, he may show, affirmatively, under such denial, that the injury arose from some other cause. But, in this state, contributory negligence must be specially pleaded.

Appeal from Jackson Circuit Court, Hon. James H. Slover, Judge.

*Reversed and remanded.*

Statement of case by the court.

This was an action to recover damages caused to the property of the female plaintiff by the defendant obstructing the free flow of the water of a natural stream. The obstruction consisted of a culvert, built in the stream where one of the defendant's streets crossed the same, insufficient in size to carry off the water of the stream.

The answer was a general denial first, and then it set up the following defence:

"For its second defence herein, the defendant states that, at the times the plaintiffs allege they were damaged, there were unusual and extraordinary rainfalls and storms, and such as were unprecedented; and that, by reason of such rainfalls and storms, the said O. K. creek overflowed; and if the plaintiffs were damaged, it was by reason of said rains, and not by reason of any carelessness or negligence of defendant."

The case was tried by the court, without the intervention of a jury. The court gave, for the plaintiff, the following declarations of law:

"1. The court declares the law to be that if the rains that accumulated in the bed of the south branch of O. K. creek, at the times charged in the petition, were such as might reasonably be expected to occur in this locality, then it was the duty of the defendant, if it undertook to provide a culvert for the passage of the water in said creek, to construct it large enough to allow of the free passage of the waters therein during such rains, provided this could have been done by the exercise of ordinary care and prudence."

"2. If the common council, by ordinance, left the size, dimensions, and manner of constructing the culvert to the judgment and discretion of the city engineer, then it became the duty of such engineer to use ordinary care and skill, both in the plan and dimensions and manner of construction of said culvert; and if it appear, from the evidence, that said culverts were too narrow, and not high enough, and that such defects therein were due to a want of ordinary care and prudence on the part of said engineer, then such negligence and want of care must be imputed to the defendant, the City of Kansas, and said city be held responsible therefor."

"3. In erecting a culvert across O. K. creek, or the south branch thereof, it was the duty of the City of Kansas, in order to protect property along said creek

from overflow, to exercise ordinary care and prudence, both as to the dimensions and capacity of the culvert and its manner of construction, so as to admit the free and unobstructed passage of the water of said creek, not only during the dry season, but also when the water thereof should be swelled by the usual freshets and heavy rainfalls; and if it appears, from the evidence, that in the construction of said culvert the defendant did not exercise such care and prudence, but negligently constructed the same, so as to divert the water from its channel and flood the property of plaintiff, as stated in his petition, then the verdict must be for the plaintiff, provided said stream was a natural water-course, as defined in these instructions."

"4. Although it should appear, from the evidence, that the stream was swelled by heavy rains, and the overflow took place at that time, yet if it further appears that such rains were and had been frequent, and might have reasonably been expected to occur in any year, then it was the duty of defendant, in making a culvert, to make allowance for such heavy rains, in order to build a culvert with a water-way reasonably sufficient to carry off the water accumulating at such times and under such circumstances; and to this end it was the duty of defendant to exercise that degree of care and diligence which a person of ordinary care and prudence would have used under similar circumstances. And if it appears, from the evidence, that defendant constructed the culvert complained of, in such manner and of such dimensions as to be too small to carry off the water that usually collected during such freshets, and instead of allowing its passage it obstructed it and diverted its course, and the insufficiency of such culvert was due to the negligence and want of ordinary care and prudence of defendant, and plaintiff was injured thereby, as stated in his petition, then the verdict must be for plaintiff."

The court refused to give for the defendant, among others, the following declarations of law:

"8. If the court believes, from the evidence, that the design, plan, specifications, and dimensions of the culverts in question, were selected and determined upon by the city engineer of the City of Kansas, and were not approved or adopted by the common council of said city, then the court must find for the defendant."

"12. If the damage complained of in plaintiffs' petition was caused by the filling in of plaintiffs' lot, with others, and the changing of the course of the bed of O. K. creek, then the judgment must be for the defendant."

W. A. Alderson, for the appellant.

I. The charter of Kansas City grants to the common council the power "to establish, erect, and keep in repair, bridges, culverts, and sewers, and to regulate the use of the same." Art. 3, sect. 1, sub-div. 8. By section one, article eight of the charter, it is provided that "the common council shall have power to cause to be graded, constructed, reconstructed, paved, or otherwise improved, and repaved, all streets * * * and public highways, or parts thereof, within the city, at such time, and to such extent, and of such dimensions, and with such materials, and in such manner, and under such regulations, as shall be provided by ordinance." The culverts complained of are a part of the street which they support, and their construction constituted an improvement of the street. *City of Eudora v. Miller*, 2 Pac. Rep. 685. The ordinance in evidence, which provided for the construction of the culverts, has for its first section the following: "Stone culverts of such dimensions as the engineer shall find necessary shall be constructed on Eighteenth street at Harrison street and Forest avenue." What more flagrant violation of the charter provision, quoted *supra*, could be presented? This delegation of its power by the common council to the city engineer relieves the City of Kansas from all liability to respond to the charges of the respondents.

*Thompson v. Boonville*, 61 Mo. 282 ; *Stewart v. Clinton*, 79 Mo. 603, 609, *et seq. ; St. Louis v. Clemens*, 43 Mo. 395, 403 ; *Ruggles v. Collier*, 43 Mo. 353, 365, 366 ; *Matthews v. Alexandria*, 68 Mo. 115, 119 ; *Smith v. Rochester*, 76 N. Y. 506 ; *Rowland v. Gallatin*, 75 Mo. 134 ; *Semon v. Newton*, 134 Mass. 476 ; *Chilson v. Wilson*, 38 Mich. 267 ; *Judge v. Meriden*, 38 Conn. 90 ; *Marquette v. Cleary*, 37 Mich. 296 ; *Anthony v. Adams*, 1 Metc. 284 ; Cooley's Const. Lim. [5 Ed.] 249, and cas. cit. ; 1 Dill. Mun. Corp. [3 Ed.] sect. 96, and cas. cit. ; *Lord v. Oconto*, 47 Wis. 386 ; *Lanenstein v. Fond du Lac*, 28 Wis. 336 ; *Birdsall v. Clark*, 73 N. Y. 73 ; *Cummins v. Seymour*, 79 Ind. 491 ; *Ball v. Woodbine*, 61 Ia. 83 ; *Cumberland v. Willison*, 50 Md. 138 ; *Thompson v. Schermerhorn*, 6 N. Y. 92.

II.     The issue of ratification is not pleaded, and hence should not be now considered in the case at bar. But if by any reasoning it can now be said that the act of the city engineer, in determining upon the dimensions of the culverts was or became the act of the common council of the City of Kansas, then it was a legislative or judicial act of that body.     In determining upon the plans and specifications of the culverts the common council could create no liability for the appellant because of a mistake which made them defective.     This is a proposition so elementary as to call for no authority in its support; but from numerous cases supporting it we submit the following : *Hinds v. City of Marshall*, 22 Mo. App. 203 ; *Fair v. Philadelphia*, 88 Pa. St. 309 ; *Toolan v. Lansing*, 38 Mich. 315 ; *Foster v. St. Louis*, 71 Mo. 157 ; *Thurston v. St. Joseph*, 51 Mo. 510 ; *Stewart v. Clinton*, 79 Mo. 603, 612 ; *Child v. Boston*, 4 Allen, 41 ; *Darling v. Bangor*, 68 Me. 112 ; *Lansing v. Toolan*, 37 Mich. 152 ; *Merrifield v. Worcester*, 110 Mass. 216 ; *Detroit v. Beckman*, 34 Mich. 125 ; *Van Pelt v. Davenport*, 42 Ia. 308 ; *Roll v. Indianapolis*, 52 Ind. 547 ; *Dean v. Brooklyn*, 32 N. Y. 489, 499.

III.     The sole charge against the culverts that merits

consideration is that they were insufficient to receive the volume of water which could flow in O. K. creek. That they were substantially and properly constructed appears conclusively from the respondents' own evidence. The sequence is that the city engineer simply erred in a matter of judgment. His act in determining the dimensions of the culverts was judicial and can create no liability on the appellant to answer for any damages resulting therefrom. *Judge v. Meriden*, 38 Conn. 90; *Van Pelt v. Davenport*, 42 Iowa, 308; *Dean v. Brooklyn*, 32 N. Y. 489; *Detroit v. Beckman*, 34 Mich. 125; *Darling v. Bangor*, 68 Me. 112; *Child v. Boston*, 4 Allen [Mass.] 41.

IV. The distinction is universally recognized, between acts done in behalf of the corporation in its private capacity, such acts as redound to its own emolument, and those acts performed for the municipality in its public capacity. The latter acts cannot place on the corporation any liability for damages caused thereby. *Murtaugh v. St. Louis*, 44 Mo. 479; Thompson on Negligence, 737.

V. The common-law principles affecting questions pertaining to the liability created by interfering with the water-course of a living stream, cannot avail respondents : "To establish, alter, and change the channel of water-courses, and to wall them up and cover them over," is a corporate power of the appellant city. Charter, art. 3, sect. 1, sub-div. 8.

VI. We wish, also, to urge on the court the error committed by the trial court in refusing the appellant's instructions numbered two, eight, eleven, twelve, and thirteen. By the rejection of these instructions the trial court refused to consider and entirely ignored the issues, whether the damage complained of was caused by reason of the culverts being defectively planned; or whether the common council had improperly delegated its power to the city engineer; or whether the damage resulted from causes other than the culverts, and would

have occurred had the culverts not been constructed at
all ; or whether the damage was caused by the changing
and narrowing of the channel and bed of the creek by the
owners of the property at the location of respondents'
premises. The evidence in support of each of these
issues was voluminous and positive, and there can be no.
justification shown for the rejection of the instructions.

VII. The instructions given by the court in behalf
of the respondents show the very erroneous theory on
which the court tried the cause. By the refusal of the
instruction numbered seven, presented by the appellant,
the trial judge positively refused to even consider what
constituted a rainstorm of unusual and extraordinary
force and violence.

THEODORE WINNINGHAM and ADAMS & FIELD, for
the respondents.

I. Municipal corporations are liable for the diver-
sion or obstruction of the waters of a running stream or
natural water-course. *Barnes v. Hannibal,* 71 Mo. 449 ;
*Rose v. St. Charles,* 49 Mo. 509 ; *Jones v. Hannovan,*
55 Mo. 467 ; Dillon's Mun. Corp., sects. 1038, 146, 986,
1047 ; *Spelman v. City of Portage,* 41 Wis. 144 ; *Mayor
of Helena v. Thompson,* 29 Ark. 569 ; *Perry v.
City of Worcester,* 6 Gray [Mass.] 544 ; *Parker v.
City of Lowell,* 11 Gray, 353 ; *Sprague v. City of Wor-
cester,* 13 Gray, 196 ; *City of Aurora v. Love,* 93 Ill.
521 ; *Rochester White Lead Co. v. Rochester,* 3 Com-
stock, 463 ; *Conrad v. Trustees of Utica,* 16 N. Y. 158 ;
definition of natural water-course also found in 71
Mo. 249 ; *Munkers v. Railroad,* 72 Mo. 514 ; *Mootry
v. Town of Danbury,* 45 Conn. 555 ; *City of Dixon v.
Baker,* 65 Ill. 518 ; *Benson v. Railroad,* 78 Mo. 512 ;
*Kruler v. City of Springfield,* 35 Mo. 126 ; *Noonan v.
City of Syracuse,* 79 N. Y. 470. But it is contended by
counsel for appellant that inasmuch as the legislature
has empowered the city " to establish, alter, and change
the channel of water-courses and to wall them up and

cover them over," "that the common-law principles affecting questions pertaining to the liability created by interfering with the water-course of a living stream cannot avail the respondents." We confidently submit that a law which should authorize a city to divert the course of a running stream and also exempt the corporation from the payment of damages therefor would be clearly unconstitutional. See *Thompson v. Railroad*, 3 How. [Miss.] 240. The statute in question will not admit of such a construction. It should be so construed as to harmonize with that clause of the constitution which prohibits the damaging of private property for public use without just compensation. If this is done the general principle asserted in point one, will be preserved and the long line of decisions supporting it remain undisturbed.

II. The doctrine that the council, in adopting a plan, acts in a *quasi*-judicial capacity, or, more properly speaking, a legislative capacity, and that of such acts liability cannot be predicated, has no application in the case at bar. That principle, while it has been approved in this state, has never been applied when the waters of a running stream were diverted. It has hitherto been confined to surface water cases only. To say that the city can divert a water-course, to the damage of a riparian proprietor, and escape liability, upon the ground that the act complained of was an error of judgment, would be a monstrous proposition, and any case asserting such a doctrine would be a judicial enormity. Instead of extending this principle beyond surface watercourses, it should be limited and curtailed, and, we predict, will eventually be exscinded as pernicious. Judge Thompson, in his work on negligence, has ventured to disapprove of it in strong terms. Thomp. on Neg. 736. Its incongruity has been exposed in the following cases: *Evansville v. Decker*, 84 Ind. 325; *Cummins v. Seymour*, 79 Ind. 491; *Weis v. Madison*, 75 Ind. 241; *White Lead Co. v. Rochester*, 3 Comst. 474; *Bar-*

*ton v. Syracuse*, 37 Barb. 294; *Conrad v. Trustees*, 16 N. Y. 159; *Helena v. Thompson*, 29 Ark. 569.

III.   There is nothing in the point, that the council delegated to the engineer the duty of determining the size of the culverts.   (1) Because the charter does not impose upon the council the duty of determining the size of culverts, as it does in the matter of sewers, etc. The subject of culverts is especially covered and controlled by article 3, section 1, subdivision 8, and is not affected by the general provision on the subject of street improvements in section 1, of article 8.   *Long v. Culp*, 14 Kas. 412; *Griffith v. Carter*, 8 Kas. 565. (2) Even if that duty was imposed, it does not follow that the city can escape liability on the ground of her failure to observe it.   Counsel for appellant seems to have lost sight of the distinction between a total want of power and irregularities in its exercise.   If the act complained of be within the general scope of the powers conferred, the defence of *ultra vires* cannot be successfully interposed.   The power to build culverts is expressly conferred upon the defendant (Charter Kansas City, art. 3, sect. 1, subdiv. 8), and, in the case at bar, that power was exercised by ordinance; the culvert was built and paid for by defendant and remained under its exclusive control.   The following authorities establish its liability under such circumstances:   Dill. Mun. Corp., sects. 968, 971; *Hunt v. Boonville*, 65 Mo. 620; *Sanlord v. St. Louis*, 36 Mo. 546; *Dooley v. Kansas City*, 82 Mo. 444.   The cases cited by appellant on this have no application.   2 Morawetz on Pub. Corp. [2 Ed.] sect. 727.

IV.   The instructions asked by appellant, and refused by the court, were properly refused.   Number one is a mere abstraction and subject to two obvious and fatal objections.   (1) It commits the whole theory of negligence, both as respects its legal aspects and its constitutive facts, to the jury, or to the court sitting as a jury. We may now regard it as a settled practice, in this state,

that negligence is to be considered, whenever practicable, as a question of law. This rule, of course, has its exceptions, but we are quite clear that the foregoing instruction does not fall within any exception. thereto. The Supreme Court, speaking upon this subject, say : "It is for the jury to find the facts, but it is the province and duty of the court to declare whether or not facts which there is evidence tending to prove constitute negligence. Instructions of that character are more satisfactory guides to the jury than those which deal in vague generalities." *Zimmerman v. Railroad*, 71 Mo. 491. (2) The instruction omits an element fatal to its legal correctness. It wholly fails to submit the question as to whether the culvert was sufficient to accommodate an ordinary rain-storm. For aught that is submitted in the instruction, the same injury may have occurred from an ordinary rain-storm, owing to the insufficiency of the culvert. Even if we admit that the rain-storm in question was an extraordinary one, and caused the damage complained of, yet, if an ordinary rain-storm would have caused the same injury, because of the insufficiency of the culvert, the defendant would still be liable. This idea is conspicuous in the instructions approved by this court in *Brink v. Railroad* (17 Mo. App. 177). Hence, the omission of this element in instruction numbered one, asked by the defendant, justified the court in refusing it. The evidence on both sides showed, beyond dispute, that the culvert was too small to carry off an ordinary rainfall, and that its insufficiency, in size and manner of construction, and not the character of the rain-storm, was the real cause of the injury. The tenth refused instruction is obnoxious to the same criticisms as the first. The eleventh presents, in a confused and unintelligible form, a proposition wholly beside the case made. If otherwise relevant, its incongruity of form alone was sufficient reason for refusing it. The eleventh and twelfth presented issues not raised by the pleadings, or else were covered by the

instructions given. The second and eighth instructions were properly refused, for reasons given under points one and two. *Pompelly v. Green Bay Co.*, 13 Wall. [U. S.] 166; *Inman v. Tripp*, 11 R. I. 520; *Rose v. St. Charles*, 49 Mo. 509; *Ashley v. Port Hudson*, 35 Mich. 296.

## I.

HALL, J.—The ordinance directing the construction of the culvert authorized the city engineer to determine its dimensions. The point is made by defendant's counsel, that it was the duty of the common council to have provided, by ordinance, what the dimensions of the culvert should be, and that the ordinance in question delegated the power of the common council in that respect to the engineer, and thereby relieved the defendant of all liability on account of the construction of the culvert. This contention of counsel is based upon the following provisions of defendant's charter: "The common council shall have  *  *  * , and likewise shall have power within the jurisdiction of the city, by ordinance:  *  *  * Eight. To establish, erect, and keep in repair bridges, culverts, and sewers, and to regulate the use of the same; to establish, alter, and change the channel of water-courses, and to wall them up and cover them over." Sect. 1, art. 3, of amendment to charter; Laws of 1875, pp. 203. 204. "The common council shall have power to cause to be graded, constructed, reconstructed, paved, or otherwise improved and repaired, all streets, sidewalks, alleys, or public highways, or parts thereof, within the city, at such time, and to such extent, *and of such dimensions*, and of such materials, and in such manner, and under such regulations, *as shall be provided by ordinance;*  *  *  *" Sect. 1, art. 3, amend. to chart.; Laws of 1875, p. 250. The argument is that the culvert, because it was in the street, is to be deemed a part of the street, and is, therefore, subject to the provisions of the charter requir-

ing the ordinance, ordering certain street improvements, to prescribe the dimensions and materials of the work. The above provisions of the charter must, however, be construed in connection with other provisions of the charter, in order to determine the correctness of the contention.

The mode of assessing and collecting the cost of the various kinds of street improvements referred to is provided by several sections of article eight of the amendment of the charter referred to above. Culverts are not included in the improvements enumerated in the first section of said article. This must be conceded. Mention of culverts is made in the whole article in only one instance. Section seven of said article eight contains, among other things, the following provisions: "The work done in constructing, partially or wholly, any street or avenue, may be protected from surface water by temporary drains or culverts, put in under the directions of the city engineer or other officer in charge of or superintending the work, or otherwise, as provided by ordinance; and the same be closed, removed, or altered at will, and the city shall not be liable for damage resulting to private property from insufficiency or want of repair of such drains or culverts, or in respect thereof, in any way." As culverts are not contained in the enumeration of street improvements; as no provision is made for the payment for culverts, or mention made of them in the whole article concerning street improvements, except in the one instance stated, it is clear to our minds that culverts cannot be deemed to be street improvements, or held to be subject to the provision of the charter in relation to street improvements, except in that single instance. There is no pretense made that the culvert in suit was built as a temporary culvert, to protect a street improvement. The charter did not require the common council to prescribe the dimensions of the culvert. The ordinance properly

conferred upon the city engineer the power to determine such dimensions.

## II.

It is contended by the defendant's counsel that the act of determining the dimensions of the culvert was a *quasi*-judicial act, and that a mistake as to the dimensions required would not render the defendant liable. The distinction between the ministerial and judicial duties of a municipality is, as has been well said by Judge Dillon, "plain in theory, but oftentimes difficult of application to particular cases." The distinction would seem to necessarily rest upon a discretion had by the city to discharge or not discharge the duty, because where the duty is absolute and imperative, and the city has no discretion, the duty is ministerial, its discharge not depending upon the exercise of judgment, but being required by law. It is by force of this reason for the distinction between ministerial and judicial duties, that a duty which is judicial before the municipality has entered upon the performance of it, frequently becomes, when its performance is entered upon, ministerial. The municipality has a discretion to do or not to do the work ; the duty is, therefore, judicial up to the time that it is determined to do the work; but when the work is ordered, the law often requires that it be done in a particular manner, or that it be not done in a certain way, and, therefore, after the work is ordered, the duty of the municipality to do the work in the manner required, and not to do it in the way forbidden, is ministerial. The municipality, as to these two things, has no discretion ; as to them its judgment is superseded, controlled, and directed by the requirements of the law, and its duty is to comply with these requirements.

This idea has been clearly set forth in many adjudicated cases, but it has nowhere, so far as I know, been better expressed than in *Hinds v. City of Marshal* (22 Mo. App. 214), in which case, after recognizing the doc-

trine that the duty of a municipality to improve its streets is a judicial duty, which the municipality, in its discretion, may determine to exercise or not exercise, the duty of the municipality in doing the work, when determined upon, was, in certain respects, declared to be ministerial, in these words: "But as the further and imperative duty rests upon the corporation to protect its streets and sidewalks from dangerous nuisances and obstructions, and to keep them in a reasonably safe condition for use by the public by day and night, it would be an absurd contradiction to say that it might determine on a plan for the improvement of its streets, which would expose the public to perils and dangers of life and limb, by digging yawning ditches along and about its highways, and leave them unprotected and unguarded, and without any danger signals, to entrap the unwary, and often the most vigilant, at night."

There is a wide difference between the power of a municipality with respect to natural streams and surface water. Dillon on Municipal Corp., sect. 797. The author there states that a municipality has not the right, with respect to natural streams, to injure the property of others "by badly-constructed and *insufficient culverts or passage-ways*, obstructing the free flow of water." In support of the text, many cases are cited in a note, and among others, *Rose v. St. Charles* (49 Mo. 509), in which case it was held that the defendant city was liable for the damages caused by damming up a water-course in the grading and filling of certain streets. The difference between the power of a city with respect to natural streams and surface water, has been further recognized by our Supreme Court, in *Imler v. City of Springfield* (55 Mo. 126), and *Barns v. City of Hannibal* (71 Mo. 449). In the former case it was said: "A liability would exist against a city for filling up or damming back a stream of running water, so that it would overflow its banks and flow upon the land of another; but a very different

rule exists as to surface water." In the latter case, the defendant city was held liable for damages caused by it in changing the channel of a natural stream, under the authority of its charter, by reason of the new channel having been constructed of a width and depth insufficient to afford a passage-way for the water of the stream, equal in capacity to the old channel.

In making the culvert, in the present case, it was the duty of the defendant, absolute and imperative, to so make the culvert as not to obstruct the water of the running stream, to the injury of others. As to that duty, the defendant had no discretion. The defendant did not have to build a culvert at all, but in building a culvert, when it was determined to build one, the defendant had to build one in accordance with the requirement named, i. e., so as not to obstruct the water of the stream, to the injury of others. The defendant had to build a sufficient culvert; the defendant had not the right, in building a culvert, to create a nuisance. Hence, the act of determining the dimensions of the culvert was a ministerial and not a judicial act; and the defendant was liable for all damages caused by the insufficiency of the said dimensions. This conclusion is supported by the following cases, in addition to those already cited: Spellman v. City of Portage, 46 Wis. 147; Perry v. City of Worcester, 6 Gray, 544; Parker v. City of Lowell, 11 Gray, 353; Sprague v. City of Worcester, 13 Gray, 196; Rochester White Lead Company v. City of Rochester, 3 Comstock, 463; Mootry v. Town of Danbury, 45 Conn. 555; Noonan v. City of Albany, 79 N. Y. 170.

So far as concerns this point, the declarations of law given for the plaintiff were fair to the defendant. The said declarations of law also, in effect, declared the law properly as to the defendant's duty in regard to extraordinary rains. The case having been tried by the court, without the aid of a jury, the declarations of law are to be considered by us as only for the purpose of

ascertaining the theory on which the court tried the case. Hence, we do not think the objection made by the defendant to the action of the court, in refusing certain declarations of law asked by it, referring expressly to the subject of extraordinary rain-storms, well made. The declarations of law given for the plaintiffs clearly show that the court tried the case in accordance with the correct theory in regard to that matter.

## III.

The latter clause of that portion of section 1, of article 3, quoted above, being in these words: " To establish, alter, and change the channel of water-courses, and to wall them up, and cover them over," cannot be held to authorize the common council to disturb any vested rights. Such does not appear to have been the intention of the legislature. The intention of the legislature to confer such power upon the common council would have to be clear and manifest before we should so construe the charter, because a provision effectuating such intention would seem to be prohibited by that provision of the constitution of this state in these words: "That private property shall not be taken or *damaged* for public use, without just compensation." Const. of Mo., sect. 21, art. 2. The change of the channel of the stream, made by the city of Hannibal, on account of which it was held liable in *Barns v. City of Hannibal* (*supra*), was made under an express provision of its charter.

## IV.

Declaration of law, number twelve, asked by the defendant, stated a correct proposition of law. This seems to be conceded by the counsel for the plaintiffs, for the reasons given by them to sustain the action of the court in refusing said declaration of law are, that it presented an issue not raised by the pleadings, and that there was no evidence to support it. An examination

of the abstract of the record discloses sufficient evidence on which to base the declaration of law. We can conceive of no reason for the court's action in refusing to give it, except the other reason assigned by counsel, *i. e.*, that it presented an issue not raised by the pleadings.

The answer contained a general denial. As to the issues raised by a general denial, in a case for negligence, Judge Bliss says. "In an action for negligence, by which property or the person is injured, the fact that the injury results from the negligence of defendant, is put in issue by a general denial, and, hence, he may show affirmatively, under such denial, that the injury arose from some other cause." Bliss on Code Plead., sect. 329. And on this subject Mr. Pomeroy says: "In actions for injuries to persons or property alleged to have resulted from the defendant's negligence, he may prove, under a general denial, that the wrong was caused by the negligence of third persons, not agents of the defendants, and for whom he was not responsible; or he may prove contributory negligence of the plaintiff." Pomeroy's Rem. & Rem. Rights, sect. 675. In this state contributory negligence of the plaintiff must be specially pleaded. *Donovan v. Railroad*, 89 Mo. 149. But, with this exception, the foregoing statements of the issues raised by the general denial, in an action for negligence, seems to have the approval of our Supreme Court. In *Cousins v. Railroad* (66 Mo. 572), it was held that in an action against a railroad company, under the old fifth section of the damage act, for killing stock, it was competent for the railroad company to show, under the general denial, that the injury was caused by a locomotive, which was, at the time, being used by a servant of the company, without authority, for purposes of his own, and outside of the line of his employment.

The general rule as to the effect of the general denial, under the code, is: "It forces the plaintiff to

prove all the material allegations of facts contained in his complaint or petition, and constituting his cause of action, by sufficient evidence at least to make out a *prima facie* case; it also permits the defendant to offer any and all legal evidence which controverts those averments, and contradicts the plaintiff's proofs." Pomeroy on Rem. & Rem. Rights, sect. 666 ; see, also, Bliss on Code Pleadings, sect. 326. By proving that some one else than himself caused the injuries complained of, the defendant would necessarily prove that he did not cause said injuries. Logically, it must follow, from the general rule stated, as to whose correctness there can be no question, that the defendant, under the general denial, may prove that a third party caused the injuries in suit. In our opinion, the general denial raised the issue presented by the declaration of law.

For the refusal of the court to give said declaration of law, the judgment must be reversed, and the cause remanded. It is so ordered. All concur.