**Ethel HARDY, Respondent,**

v.

**KANSAS CITY, Missouri, a Municipal Corporation, Appellant.**

**No. 22275.**

Kansas City Court of Appeals.

Missouri.

Nov. 7, 1955.

David M. Proctor, Frank O. Benson, Kansas City, for appellant.

Lillie Knight, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff was the owner of a house and three lots, facing south on 81st Street Terrace, immediately·east of Brookside Road, which bounded her property on the west. During the spring and summer of 1951 defendant, Kansas City, Missouri, caused a sanitary and storm sewer to be constructed along Brookside Road, from 84th Street to 81st Street, one-half block north of 81st Terrace. Plaintiff's property was flooded a number of times, from May until December, 1951. She sued defendant, charging that the flooding was caused by defendant's construction of said sewer. Verdict was for plaintiff and she had a judgment thereon in the amount of $1,500, from which defendant appeals.

Plaintiff's property fronted 117 feet on 81st Terrace, and ran to the north 140 feet. The land to her north sloped toward plaintiff's property, as it did to the east; and the area south of her continued in a southerly slope. On the west side of Brookside Road Kansas City Public Service Company maintained a railroad embankment, several feet higher than the road. A creek flowed between the embankment and the west side of Brookside. The creek was from five to six feet in width and from two to four feet in depth. A constantly flowing spring emptied into the creek at a point about west of the southwest corner of plaintiff's property. Water flowed along the creek bed at all times. There was a drainage ditch along the east side of Brookside, some two feet deep and two feet wide. A fifteen-inch corrugated metal pipe carried water from the ditch under 81st Terrace, into a catch basin, and thence into a manhole located at the southeast corner of the

intersection. There was a 24-inch vitrified clay pipe which led from the creek, near the spring, diagonally across the intersection into said manhole, and a 24-inch pipe led from the manhole southeasterly to a point on the south side of 82nd Street, where it discharged into a creek. These installations had been privately constructed long prior to the time this territory was included within the corporate limits of Kansas City. The workmanship and materials were excellent, and the system was in good condition.

Plaintiff acquired her property in 1939 and occupied it as a home from that time until December, 1951, when she sold it. There was much substantial evidence to the effect that, during plaintiffs ownership, until May, 1951, there had been no flooding of her property except in 1943 when the Public Service Company installed steps leading down to Brookside from its embankment and which so obstructed the flow of the creek as to cause the waters thereof to "shoot" across onto the west side of plaintiff's property, flooding the west 12 to 14 feet of her west lot. The evidence was also to the effect that the Public Service Company, shortly thereafter, removed and corrected the cause of the obstruction and that no further flooding occurred until May, 1951. There was no evidence to the contrary.

Plaintiff's witness, Schmitz, a qualified engineer, testified to the existence, good materials and workmanship, excellent condition, and adequacy of the drainage facilities existing at the intersection of 81st Terrace and Brookside prior to 1951. He stated that the facilities were adequate to satisfactorily carry drainage for 25 acres of land, of the character of terrain involved, and that the area actually to be drained was less than 20 acres. He also stated that the fact that there had been no flooding, except as above noted, for a period of 12 years, tended to establish the adequacy of the drainage facilities above described.

Plaintiff's evidence was to the effect that, during the course of construction, the contractor filled the creek to that it was level with the roadway of Brookside west of the intersection and west of the south portion of her property, covered the spring, and removed or broke the 24-inch pipe leading from the creek to the manhole above mentioned; that dirt was piled in the intersection and the manhole was covered with dirt; that, in May, 1951, there was a heavy rain which resulted in water draining from the north and east onto the lower west side of her property where it stood more than three feet deep; that it completely covered the surface of the intersection and covered the west two lots, coming up to the house, which was located on the east portion of her property; that it stood for two days and nights; that water also covered the land south of her down to 82nd Street; that she notified defendant of the situation and asked for relief; that she was told to notify Torson Construction Company, the contractor, which she did; that she was afforded no relief.

Her evidence was also to the effect that similar flooding occurred in July, about the time of the "big flood," and in August after the work was completed and the contractor had moved; that she had water on her west property at other times during the summer; and that there was also water on her property in December, when she vacated the property.

Her witness, Schmitz, testified to the effect that the nature of the terrain, including the ever flowing creek, required that drainage be provided to carry off the surface water; that if none were provided flooding likely would occur.

Plaintiff's Exhibit 5 was a profile map or plat showing the plan for construction of the sewer along Brookside west of plaintiff's property. It was prepared by defendant who contends that the contractor was required to follow the directions therein contained. The plan required that the creek be filled with "spoil" to the road level at this point and no provision is made for installation of a lateral, leading from the old creek bed and spring, into a manhole to be constructed in the center of the intersection.

Mr. Torson, the contractor in charge of this project when it was built, stated that on two occasions he told defendant's inspector that drainage was required at this point but was told that such drainage was being provided for in additional contract covering laterals leading into the sewer. The plan is silent as to contraction of laterals leading into the sewer at this point. The evidence is to the effect that a 15-inch pipe, leading from the creek to the sewer was, thereafter constructed, but that it was not constructed until after the flooding herein complained of had occurred. Mr. Torson stated that he recommended to defendant's inspector and to its assistant engineer that "actually they needed more catch basins to take care of the surface water."

Mr. Mathewson, defendant's construction engineer, testified to the effect that the main sewer could not have been laid except by removing the pre-existing 24-inch pipe; that the excessive water could not have been removed except by putting it into the sewer; that if the pre-existing drainage facilities had protected plaintiff's property from overflowing for 12 years (which was the evidence) it would indicate to him, as an engineer, that the drainage facilities existing prior to construction of the sewer, were adequate; that, when the above mentioned "plan" was prepared, defendant knew of the existence of the creek, and knew that it would be necessary to provide facilities to take care of the drainage therefrom, otherwise it would cause flooding; that defendant knew that laterals would have to be provided to care for the surface drainage at this point; that such laterals were provided for later, and were constructed after construction of the main sewer had been completed.

No point is made with reference to the amount of the judgment but defendant contends that its motion for a directed verdict should have been sustained. The first reason urged is that the acts complained of by plaintiff as causing the drainage, were the voluntary acts of Torson Construction Company, an independent contractor.

■ According to the evidence, and plaintiff's trial theory, the chief cause of the drainage was the filling in of a creek and spring west of the intersection of 81st Terrace and Brookside and the removal or destruction of an existing 24-inch underground drainage, together with its failure to provide any other facilities for the drainage of surface water at that point. Defendant contends throughout that Torson was required to follow the plan, and that Torson's failure to do so caused the damage. The evidence covering this phase of the case has been set out rather fully herein, and it wholly fails to sustain defendant's contention. Its assistant engineer admitted that neither the plan furnished contractor, nor the contract entered into, provided for construction of any laterals at or near this point, but that same were provided for in a later contract.

Defendant says the plan did not require the filling of the creek bed at this point; but the plan plainly so requires. It also says that the plan requires construction of a 15-inch pipe to replace the 24-inch pipe which was there; but defendant's assistant engineer and its contractor, Torson, stated in evidence that neither the plan nor the contract contained such provision. There is no such provision in the plan, which is before us. Both of these witnesses, produced by defendant, stated that the filling of the creek bed would result in flooding at this point unless provision was made for the draining away of the surface water. Both stated that the fact there had been no flooding for 12 years prior to 1951 was evidence tending to prove that the pre-existing drainage facilities were adequate. Plaintiff's witness, Schmitz, gave it as his opinion that the drainage facilities that had been there were adequate to take care of surface water from 25 acres of land, whereas the area actually to be drained was less than 20 acres. He also stated that the condition created by defendant would likely cause flooding.

■ While the evidence necessarily covered a broader scope than the matters

mentioned in the preceding paragraphs hereof, the filling of the creek bed and the destruction of existing drainage facilities, together with defendant's failure to replace them with adequate facilities, constitute the burden of plaintiff's contention. The evidence offered by both parties centered around these matters. The jury could have found, from the evidence, that the flooding was caused by defendant's acts in that respect; that the acts complained of were done by the contractor in compliance with the defendant's directions as contained in its plan and contract. Defendant is liable for such damages as was caused by its obstruction of the flow of the creek, by its interference with the existing adequate drainage system and its failure to replace same with suitable facilities. Young v. City of Kansas, 27 Mo.App. 101, 115; Zook v. City of Louisiana, Mo.App., 12 S.W.2d 518, 519; Tucker v. Hagan, Mo.App., 300 S.W. 301, 303.

■ Defendant next contends that no case was made because the evidence disclosed that the flooding would have occurred regardless of the acts complained of. Defendant relies on Little Rock Packing Co. v. Chicago, B. & Q. R. Co., D.C., 116 F.Supp. 213. That case is authority for the legal proposition that no liability is imposed on the perpetrator of a wrongful act unless the damages complained of results from said act. It was held that where the proximate cause of the damages was an Act of God, independent of the alleged negligence, defendant was not liable.

■ However, in the case at bar, there was substantial evidence tending to prove that the flooding was due to the filling of the creek, the destruction of existing drainage facilities, and the failure of defendant to provide other facilities. There was evidence from Mr. Schmitz to that effect, and also to the effect that the roadways of 81st Street Terrace and 82nd Street Terrace were each higher up than the area to the north, thereby creating a "damming" condition. The jury could have believed that, if the underground pipe had not been destroyed, the water which could and did collect behind this barrier at 81st Terrace would have been carried away through the 24-inch pipe. Defendant's counsel attempted, on cross-examination of Mr. Schmitz, to show that if water south of 81st stood as high as it did north thereof, it could not have drained away from plaintiff's property if defendant had not disturbed the existing condition but the witness stated that the street intersections created a series of dams, similar to a series of fish ponds, each of a different level. The evidence covering the previously existing system, including a sketch thereof in evidence, discloses that water was carried from north of 81st Street Terrace through the 24-inch pipe, in a *southeasterly* direction, and discharged in a creek at a point some 135 to 140 feet *east* of the intersection of 82nd Street Terrace and Brookside, on the *south* side of the 82nd Street Terrace. Under all of the evidence it was a question for the jury to determine whether or not water causing the damages would have been carried away through the pipe that was removed under defendant's "plan."

It is also pointed out that in 1943 plaintiff's property was flooded, before commission of the acts complained of. However, plaintiff offered a reasonable explanation for the cause of that flooding and, after removal of the obstruction placed in the creek by the Public Service Company, her property was not again flooded prior to 1951. The jury may have considered that testimony as materially corroborative of plaintiff's contention as to the proximate cause of the 1951 flooding.

Under all of the evidence the question of defendant's liability was one for the jury.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.